# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA
### CASE NO.  0:23-cv-00314-WMW-ECW

_____

REGINALD MERCHANT,

      Plaintiff,

    vs.

EXPERIAN INFORMATION
SOLUTIONS, INC.; TRANS UNION,
LLC; and AMERICAN EXPRESS
COMPANY;

      Defendants.

Judge Wilhelmina M. Wright

Magistrate Judge Elizabeth Cowan Wright

_____

## TRANS UNION, LLC'S ANSWER TO PLAINTIFF'S COMPLAINT AND AFFIRMATIVE DEFENSES

_____

Trans Union, LLC ("Trans Union"), by counsel, responds to Plaintiff's Complaint (the "Complaint") as follows. For the Court's convenience, Plaintiff's allegations are set forth verbatim with Trans Union's responses immediately following.

## <u>INTRODUCTION</u>

1.     The computerization of our society has resulted in a revolutionary increase in the accumulation and processing of data concerning individual American consumers. Data technology, whether it is used by businesses, banks, the Internal Revenue Service, or other institutions, allows information concerning individual consumers to flow instantaneously to requesting parties.  Such timely information is intended to lead to faster

and better decision-making by its recipients and, in theory, all of society should ultimately benefit from the resulting convenience and efficiency.

**ANSWER:** Trans Union denies that the statements contained in this paragraph require a response from Trans Union.

2.     However, unfortunately this information has also become readily available for, and subject to, mishandling and misuse. Individual consumers can and do sustain substantial damage, both economically and emotionally, whenever inaccurate or fraudulent information is disseminated and/or obtained about them. In fact, the Credit Bureau Defendants acknowledge this potential for misuse and resulting damage every time they sell their respective credit monitoring services to a consumer.

**ANSWER:** As Plaintiff's allegations are stated and absent a proper definition of the terms employed, Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

3.     The ongoing technological advances in the area of data processing have resulted in a boon for the companies that accumulate and sell data concerning individuals' credit histories and other personal information. Such companies are commonly known as consumer reporting agencies ("CRAs").

**ANSWER:** Trans Union admits that it is a "consumer reporting agency" as that term is defined by the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* Trans Union

states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5).  Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

4.    These CRAs sell information to readily paying subscribers (i.e., retailers, landlords, lenders, potential employers, and other similar interested parties), commonly called "consumer reports," concerning individuals who may be applying for retail credit, housing, employment, or a car or mortgage loan.

**ANSWER:**   As Plaintiff's allegations are stated and absent a proper definition of the terms employed, Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

5.    Since 1970, when Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"), federal law has required CRAs to implement and utilize reasonable procedures "to assure maximum possible accuracy" of the personal, private, and financial information that they compile and sell about individual consumers.

**ANSWER:**   Trans Union states that the cited provision of the FCRA speaks for itself.  To the extent Plaintiff misquotes or mischaracterizes the requirements set forth

therein, Trans Union denies the allegations as stated. Trans Union states that the remaining

allegations of this paragraph are legal conclusions and, so stating, denies them.

6.      One of the primary purposes in requiring CRAs to assure "maximum possible

accuracy" of consumer information is to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

*See* 15 U.S.C. § 1681(a)(1).

**ANSWER:**   Trans Union states that the cited provision of the FCRA speaks for

itself.  To the extent Plaintiff misquotes or mischaracterizes the requirements set forth

therein, Trans Union denies the allegations as stated. Trans Union states that the remaining

allegations of this paragraph are legal conclusions and, so stating, denies them.

7.      The preservation of one's good name and reputation is also at the heart of the

FCRA's purposes:

> [W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as deny him the opportunity to obtain a mortgage or buy a home.  We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his good name without his knowledge and without reason.  Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed.

*Bryant v. TRW, Inc.,* 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 cong. Rec. 36570

(1970)] (emphasis added).

**ANSWER:**  Trans Union states that <u>Bryant v. TRW, Inc.</u> speaks for itself. Trans Union states that the remaining allegations of this paragraph are legal conclusions and, so stating, denies them.

8.      The FCRA also requires CRAs to conduct a reasonable reinvestigation to determine whether information disputed by consumers is inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which the CRA receives the notice of dispute from the consumer.  This mandate exists to ensure that consumer disputes are handled in a timely manner and that inaccurate information contained within a consumer's credit report is corrected and/or deleted so as to not prevent said consumer from benefiting from his or her credit and obtaining new credit.

**ANSWER:**  Trans Union states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

9.      In light of these important findings and purposes, Congress specifically noted "a need to insure that [CRAs] exercise their grave responsibilities with fairness, impartiality, and respect for the consumer's right to privacy." *See* 15 U. S.C. § 1681(a)(4).

**ANSWER:**  Trans Union states that the cited provision of the FCRA speaks for itself.  To the extent Plaintiff misquotes or mischaracterizes the requirements set forth therein, Trans Union denies the allegations as stated. Trans Union states that the remaining allegations of this paragraph are legal conclusions and, so stating, denies them.

10.      The FCRA also requires furnishers of information, a creditor or other third party that provides information about consumer to a CRA, upon notice, to conduct a

reasonable reinvestigation of all disputes with regard to the completeness or accuracy of any information it provides to the CRAs regarding a consumer and modify, delete, or permanently block any items of information found to be inaccurate, incomplete, or unverifiable after said reinvestigation is completed.

**ANSWER:** Trans Union states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

11.     Plaintiff's claims arise out of the Credit Bureau Defendants' blatantly inaccurate credit reporting, wherein the Credit Bureau Defendants reported to Plaintiff's potential creditors that he is "deceased" and does not have a credit score.

**ANSWER:**   Trans Union denies that it violated the FCRA (or any other law). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

12.     Accordingly, Plaintiff brings claims against the Credit Bureau Defendants for failing to follow reasonable procedures to assure the maximum possible accuracy of Plaintiffs credit reports, in violation of the FCRA, 15 U.S.C. § 1681e(b), and failing to conduct a reasonable reinvestigation to determine whether information Plaintiff disputed was inaccurate and record the current status of the disputed information, or delete the disputed information from Plaintiffs credit file, in violation of the FCRA, 15 U.S.C. § 1681i.

**ANSWER:**   Trans Union admits that Plaintiff has asserted claims against it under the FCRA, but denies that it violated the FCRA (or any other law). Trans Union states that

it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

13.    Plaintiff also brings a claim against Defendant American Express for failing to fully and properly reinvestigate Plaintiff's disputes and review all relevant information provided by Plaintiff and the Credit Bureau Defendants, in violation of the FCRA, 15 U.S.C. § 1681s-2(b)(1).

**ANSWER:**    Trans Union denies the allegations contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

14.    As part of this action, Plaintiff seeks actual, statutory, and punitive damages, costs and attorneys' fees from Defendants for their willful and/or negligent violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.,* as described herein.

**ANSWER:**    Trans Union denies that it violated the FCRA (or any other law). Trans Union denies that Plaintiff is entitled to any damages, costs, fees, or other relief from or against Trans Union.

## PARTIES

15.    Reginald Merchant ("Plaintiff" or "Mr. Merchant") is a natural person residing in Brooklyn Park, Minnesota, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

**ANSWER:**    Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the allegation that Plaintiff resides in Brooklyn Park,

Minnesota, which has the effect of a denial under Rule 8(b)(5). Trans Union admits the remaining allegations contained in this paragraph.

16.    Defendant Experian Information Solutions, Inc. ("Defendant Experian" or "Experian") is a corporation with a principal place of business located at 701 Experian Pkwy, Allen, Texas 75013, and is authorized to do business in the State of Minnesota, including within this District.

**ANSWER:**  Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

17.    Experian is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Experian is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties.

**ANSWER:**  Trans Union states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

18.    Defendant Trans Union, LLC ("Defendant Trans Union" or "Trans Union") is a limited liability company with a principal place of business located at 2 Baldwin Place, Chester, PA 19022, and is authorized to do business in the State of Minnesota, including within this District.

**ANSWER:**  Trans Union admits that it is a Delaware limited liability company with its principal place of business in Chicago, Illinois. Trans Union states that the remaining allegations of this paragraph are legal conclusions and, so stating, denies them.

19.    Trans Union is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Trans Union is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

**ANSWER:**    Trans Union admits that it is a "consumer reporting agency" as that term is defined by the FCRA. Trans Union states that the remaining allegations of this paragraph are legal conclusions and, so stating, denies them.

20.    Defendant American Express Company ("Defendant AMEX" or "AMEX") is a multinational financial services corporation with a principal place of business located at 200 Vesey Street, Lower Manhattan, New York, NY 10285, and is authorized to do business in the State of Minnesota, including within this District.

**ANSWER:**    Trans Union states that the allegations of this paragraph are legal conclusions and, so stating, denies them

21.    Defendant AMEX is a credit grantor and "furnisher" of consumer information, as defined in 15 U.S.C. § 1681s-2(b).

**ANSWER:**    Trans Union states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

## JURISDICTION AND VENUE

22.    This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allow claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

**ANSWER:**    Trans Union admits the allegations contained in this paragraph.

23.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

**ANSWER:**   Trans Union states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

## FACTS

### Summary of the Fair Credit Reporting Act

24.     The FCRA governs the conduct of consumer reporting agencies in an effort to preserve the integrity of the consumer banking system and to protect the rights of consumers to fairness and accuracy in the reporting of their credit information.

**ANSWER:**   Trans Union admits that the FCRA "governs the conduct of consumer reporting agencies." Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

25.     The FCRA was designed to protect consumers from the harmful effects of inaccurate information reported in consumer reports (commonly referred to as "credit reports"). Thus, Congress enshrined the principles of "fair and accurate credit reporting" and the "need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness" in the very first provision of the FCRA. *See* 15 U.S.C. § 1681(a).

**ANSWER:**   Trans Union states that the cited provision of the FCRA speaks for itself. To the extent Plaintiff misquotes or mischaracterizes the requirements set forth

therein, Trans Union denies the allegations as stated. Trans Union states that the remaining allegations of this paragraph are legal conclusions and, so stating, denies them.

26.     Specifically, the statute was intended to ensure that "consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information. *See* 15 U.S.C. § 1681(b).

**ANSWER:**   Trans Union states that the cited provision of the FCRA speaks for itself. To the extent Plaintiff misquotes or mischaracterizes the requirements set forth therein, Trans Union denies the allegations as stated. Trans Union states that the remaining allegations of this paragraph are legal conclusions and, so stating, denies them.

27.     To that end, the FCRA imposes the following twin duties on consumer reporting agencies: (i) consumer reporting agencies must devise and implement reasonable procedures to ensure the "maximum possible accuracy" of information contained in consumer reports (15 U.S.C. § 1681e(b)); and (ii) consumer reporting agencies must reinvestigate the facts and circumstances surrounding a consumer's dispute and timely correct any inaccuracies (15 U.S.C. § 1681i).

**ANSWER:**   Trans Union states that the cited provision of the FCRA speaks for itself. To the extent Plaintiff misquotes or mischaracterizes the requirements set forth therein, Trans Union denies the allegations as stated. Trans Union states that the remaining allegations of this paragraph are legal conclusions and, so stating, denies them.

28.     The FCRA provides consumers with a private right of action against consumer reporting agencies that willfully or negligently fail to comply with their statutory obligations under the FCRA.

**ANSWER:**   Trans Union states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

### The Credit Bureau Defendants' Practices Concerning the Sale of Reports on the "Deceased"

29.     The Credit Bureau Defendants sell millions of consumer reports (often called "credit reports" or "reports") per day, and also sell credit scores.

**ANSWER:**   As Plaintiff's allegations are stated and absent a proper definition of the terms employed, Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

30.     Pursuant to 15 U.S.C. § 1681e(b), consumer reporting agencies, like the Credit Bureau Defendants, are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

**ANSWER:**   Trans Union states that the cited provision of the FCRA speaks for itself.  To the extent Plaintiff misquotes or mischaracterizes the requirements set forth

therein, Trans Union denies the allegations as stated. Trans Union states that the remaining allegations of this paragraph are legal conclusions and, so stating, denies them.

31.    Pursuant to 15 U.S.C. §§ 1681b and 1681e(a), consumer reporting agencies, like the Credit Bureau Defendants, must maintain reasonable procedures to assure that consumer reports are sold only for legitimate "permissible purposes."

**ANSWER:**    Trans Union states that the cited provision of the FCRA speaks for itself.  To the extent Plaintiff misquotes or mischaracterizes the requirements set forth therein, Trans Union denies the allegations as stated. Trans Union states that the remaining allegations of this paragraph are legal conclusions and, so stating, denies them.

32.    The Credit Bureau Defendants routinely place a "deceased" notation or marking on reports when it is advised by any of its many data furnishing sources (such as banks, debt collectors, etc.) that a given consumer is deceased.

**ANSWER:**    Trans Union denies that it violated the FCRA (or any other law). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

33.    The Credit Bureau Defendants' furnishing sources identify "deceased" consumers by marking the "status" of such consumer's responsibility for any subject account with an "X" or "U/UNDESIGNATED" code in the "ECOA" field of an electronic data input format used in the credit reporting industry, known as Metro or Metro 2.

**ANSWER:**    Trans Union states that the Metro 2® Format speaks for itself.  To the extent that Plaintiff misquotes or mischaracterizes the features of the Metro 2® Format, Trans Union denies the allegations as stated. As Plaintiff's allegations are stated and absent

a proper definition of the terms employed, Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of the remaining allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

34.    The Credit Bureau Defendants do not request or require a death certificate from any of their data sources which advise that a consumer is "deceased" before placing a "deceased" mark in that consumer's credit file.

**ANSWER:**   As Plaintiff's allegations are stated and absent a proper definition of the terms employed, Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of the remaining allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

35.    The Credit Bureau Defendants do not request or require any proof from any data source which advises that a consumer is "deceased," showing that the consumer is in fact deceased before placing a "deceased" mark on that consumer's report.

**ANSWER:**   As Plaintiff's allegations are stated and absent a proper definition of the terms employed, Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of the remaining allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks

knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

36.     The Credit Bureau Defendants do not independently verify with any source that a consumer is in fact deceased before placing a "deceased" mark on that consumer's report.

**ANSWER:**   As Plaintiff's allegations are stated and absent a proper definition of the terms employed, Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of the remaining allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

37.     In some cases, in order to assure accuracy, the Credit Bureau Defendants may send letters and/or other communications to consumers when certain information that may be considered suspicious or unreliable is furnished about said consumers to be placed in their credit files, such as in cases where consumers have a freeze or fraud alert on their credit report, or in accordance with certain state laws, such as the consumer laws of Colorado.  The Credit Bureau Defendants do not have any procedure to notify consumers (such as a next of kin or executor or administrator of the consumer's estate) when an "X" or "U/UNDESIGNATED" deceased code is furnished to them to be placed in said consumer's credit file or report.

**ANSWER:**   Trans Union denies that it violated the FCRA (or any other law). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

38.   The Credit Bureau Defendants regularly receive the "Death Master File" from the Social Security Administration, listing by social security number those consumers that the government believes to be deceased.  But the Credit Bureau Defendants do not cross-reference the "X", or "U/UNDESIGNATED" code received from data furnishers with the Death Master File in order to determine whether any given consumer reported as deceased via a furnishing source is also on the Death Master File before selling a credit report about said consumer, or at any time.

**ANSWER:**   Trans Union denies that it violated the FCRA (or any other law). Trans Union denies the allegations of this paragraph as they apply to Trans Union. Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

39.   The Credit Bureau Defendants will only use the Death Master File to sell additional products for an additional fee, which are designed to show whether a given consumer is truly deceased.

**ANSWER:**   Trans Union denies that it violated the FCRA (or any other law). Trans Union denies the allegations of this paragraph as they apply to Trans Union. Trans Union denies that the remaining statements contained in this paragraph require a response from

Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

40.    The Credit Bureau Defendants fail to employ reasonable procedures that assure that a consumer with a "deceased" mark on his/her report is in fact actually deceased before placing the "deceased" mark on that consumer's report and selling that report for profit.

**ANSWER:**    Trans Union denies the allegations of this paragraph as they apply to Trans Union. Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

41.    Even in instances where other data on the face of the consumer's report indicates that he/she is not deceased, the Credit Bureau Defendants do not employ any procedures to assure that a consumer with a "deceased" mark on his/her report is in fact actually deceased before placing the "deceased" mark in that consumer's file.

**ANSWER:**    Trans Union denies the allegations of this paragraph as they apply to Trans Union. Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

42.    Even in instances where the purportedly deceased consumer communicates directly with the Credit Bureau Defendants, the Credit Bureau Defendants do not employ

any procedures to assure that a consumer with a "deceased" mark on his/her report is in fact actually deceased before placing the "deceased" mark on that consumer's report.

**ANSWER:**   Trans Union denies the allegations of this paragraph as they apply to Trans Union. Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

43.    Once a "deceased" mark is placed upon a consumer's report, the Credit Bureau Defendants will not calculate and will not provide a credit score for that consumer.

**ANSWER:**   Trans Union denies the allegations of this paragraph as they apply to Trans Union. Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

44.    Upon the Credit Bureau Defendants' reports with a "deceased" mark sold to third parties, the Credit Bureau Defendants never calculate or provide a credit score for that consumer and instead report that consumer's credit score as "N/A."

**ANSWER:**   Trans Union denies the allegations of this paragraph as they apply to Trans Union. Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

45.     The Credit Bureau Defendants know that third party credit issuers require a credit score in order to process a given credit application.

**ANSWER:**   Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5).  Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

46.     The Credit Bureau Defendants know that consumers without credit scores are unable to secure any credit from most credit issuers.

**ANSWER:**   Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5).  Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

47.     The Credit Bureau Defendants know that living consumers are routinely turned down for credit specifically because they are reporting them as "deceased" and without a credit score.

**ANSWER:**   Trans Union denies that it violated the FCRA (or any other law). Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5).  Trans Union states that it lacks knowledge or information

sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

48.    The Credit Bureau Defendants have been put on notice for years through consumer disputes and lawsuits that living, breathing consumers are turned down for credit specifically because the Credit Bureau Defendants are inaccurately reporting them as "deceased" and without a credit score.

**ANSWER:**    Trans Union denies the allegations of this paragraph as they apply to Trans Union. Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

49.    The Credit Bureau Defendants have received and documented many disputes from consumers complaining that Credit Bureau Defendants had erroneously marked them as "deceased" on their credit reports.

**ANSWER:**    Trans Union denies that it violated the FCRA (or any other law). As Plaintiff's allegations are stated and absent a proper definition of the terms employed, Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of the remaining allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

50.    The Credit Bureau Defendants know that thousands of consumers are erroneously marked as "deceased" on their credit reports via an erroneous furnishing of the "X" or "U/UNDESIGNATED" code, even when said consumers are not on the Death Master File and are in fact alive.

**ANSWER:**   Trans Union denies that it violated the FCRA (or any other law). As Plaintiff's allegations are stated and absent a proper definition of the terms employed, Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of the remaining allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

51.    Nevertheless, the Credit Bureau Defendants do not employ any procedures to assure that a consumer marked as "deceased" on their credit reports is in fact deceased.

**ANSWER:**   Trans Union denies the allegations of this paragraph as they apply to Trans Union. Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

52.    Even consumers who dispute the erroneous "deceased" status on their credit reports continue to be erroneously marked as deceased unless the furnishing source which provided the erroneous "X" or "U/UNDESIGNATED" code in the first instance decides to change the code.

**ANSWER:** Trans Union denies the allegations of this paragraph as they apply to Trans Union. Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

53.    The Credit Bureau Defendants do not have any independent procedure to change an erroneous deceased status on their own and will merely parrot their furnishing source in the case of a reinvestigation into the accuracy of the deceased status upon a consumer's report, a reinvestigation which is triggered by a consumer dispute.

**ANSWER:** Trans Union denies the allegations of this paragraph as they apply to Trans Union. Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

54.    Nor do the Credit Bureau Defendants employ any procedures to limit or stop the furnishing of reports to third parties for consumers that they have marked as "deceased" under any circumstances.

**ANSWER:** Trans Union denies the allegations of this paragraph as they apply to Trans Union. Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

55.     For years after a consumer's actual death, the Credit Bureau Defendants will continue to sell credit reports about that consumer.

**ANSWER:**   Trans Union denies that it violated the FCRA (or any other law). As Plaintiff's allegations are stated and absent a proper definition of the terms employed, Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of the remaining allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

56.     The Credit Bureau Defendants will only remove a deceased consumer's file from their respective credit reporting databases when it is no longer valuable to them— meaning that no one is continuing to purchase reports about that consumer.

**ANSWER:**   Trans Union denies that it violated the FCRA (or any other law). Trans Union denies the allegations of this paragraph as they apply to Trans Union. Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

57.     The Credit Bureau Defendants charge third parties a fee for reports with a mark that a consumer is deceased ("reports on the deceased") as they would for any other report.

**ANSWER:**   Trans Union denies that it violated the FCRA (or any other law). As Plaintiff's allegations are stated and absent a proper definition of the terms employed,

Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

58.   The Credit Bureau Defendants profit from the sale of reports on deceased consumers.

**ANSWER:**   Trans Union denies that it violated the FCRA (or any other law). As Plaintiff's allegations are stated and absent a proper definition of the terms employed, Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

59.   The Credit Bureau Defendants have in their respective credit reporting databases many "deceased" tradelines corresponding to distinct credit files for individual consumers that they have marked as "deceased."

**ANSWER:**   Trans Union denies that it violated the FCRA (or any other law). As Plaintiff's allegations are stated and absent a proper definition of the terms employed, Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information

sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

60.     The Credit Bureau Defendants know that truly deceased consumers do not apply for credit.

**ANSWER:**   Trans Union denies that it violated the FCRA (or any other law). As Plaintiff's allegations are stated and absent a proper definition of the terms employed, Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

61.     The Credit Bureau Defendants know that the credit information and reports of truly deceased persons are used by criminals to commit identity theft or credit fraud. Indeed, identity theft using the personal identifying information of deceased consumers is known to the Credit Bureau Defendants to be a common and major source of identity theft.

**ANSWER:**   Trans Union denies that it violated the FCRA (or any other law). As Plaintiff's allegations are stated and absent a proper definition of the terms employed, Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

62.     The Credit Bureau Defendants know that identity theft and credit fraud are serious and widespread problems in our society.

**ANSWER:**   Trans Union denies that it violated the FCRA (or any other law). As Plaintiff's allegations are stated and absent a proper definition of the terms employed, Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

63.     The Credit Bureau Defendants warn the relatives of truly deceased consumers that identity theft can be committed using the credit reports and information of the deceased and require relatives to provide a death certificate or executorship papers, among other forms of proof, before accessing the deceased consumer's credit information or report.

**ANSWER:**   Trans Union denies that it violated the FCRA (or any other law). As Plaintiff's allegations are stated and absent a proper definition of the terms employed, Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

64.     The Credit Bureau Defendants have no similar death certificate, executorship paper, or any other proof requirements for their data sources, which report a consumer as deceased or for the purchasers of their reports who access the purportedly deceased consumer's information.

**ANSWER:**   Trans Union denies that it violated the FCRA (or any other law). As Plaintiff's allegations are stated and absent a proper definition of the terms employed, Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

65.     The Credit Bureau Defendants sell reports on supposedly deceased consumers to third parties in an automated fashion and without any specific or general certification that could reasonably explain a "permissible purpose" for purchasing or using a (supposedly) deceased consumer's credit history and/or report.

**ANSWER:**   Trans Union denies that it violated the FCRA (or any other law). Trans Union denies the allegations of this paragraph as they apply to Trans Union. Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

66.     For consumers who are deceased, there rarely, if ever, exists a permissible purpose under the FCRA for the Credit Bureau Defendants to sell their credit reports, absent a court order.

**ANSWER:**   Trans Union denies that it violated the FCRA (or any other law). Trans Union denies the allegations of this paragraph as they apply to Trans Union. Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

67.     The Credit Bureau Defendants know that such reports contain a vast amount of personal identifying and credit account information on the supposedly deceased consumer, information that can be used to commit identity theft or for other fraudulent purposes.

**ANSWER:**   Trans Union denies that it violated the FCRA (or any other law). Trans Union denies the allegations of this paragraph as they apply to Trans Union. Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

**Experian Reports Plaintiff Deceased in or around March 2022**

68.    In or around March 2022, Plaintiff learned that Experian was reporting him as deceased.

**ANSWER:**  Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

69.    Specifically, Experian was reporting the following account with a deceased notation:

(a)    American Express
       Account Number: xxxx-xxxx-xxxx-xxxx
       Date Opened: March 24, 2021
       Responsibility: Deceased
       Payment Status: Consumer reported as deceased

**ANSWER:**  Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

70.    Experian's reporting was grossly inaccurate: Plaintiff was not, and is not, deceased.

**ANSWER:**  Trans Union denies the allegations contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

71.    Experian's deceased reporting was patently inaccurate because Plaintiff is alive.

**ANSWER:** Trans Union denies the allegations contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

72.     Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy of the credit information it published and maintained concerning Plaintiff.

**ANSWER:** Trans Union denies the allegations contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

**Plaintiff's First Dispute to Experian Regarding the Inaccurate Credit Reporting in March 2022**

73.     In or about March 2022, extremely shocked, surprised, and embarrassed at Experian's inaccurate reporting, Plaintiff called Experian and disputed the deceased notation that it was reporting on his credit reports.

**ANSWER:** Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

74.     During Plaintiff's phone dispute with Experian, a representative for Experian confirmed that there was a deceased notation reporting to Plaintiff's credit file in relation to one American Express account.

**ANSWER:** Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

75.    Plaintiff explained that any notation that he was deceased on his credit files was inaccurate as he was alive, evidenced by his phone dispute, among other things.

**ANSWER:** Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

76.    Plaintiff requested that Experian reinvestigate the disputed information, correct the reporting, and for Experian to send him a corrected copy of his credit report.

**ANSWER:** Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

77.    Plaintiff never heard back from Experian regarding his dispute of the inaccurate deceased notation.

**ANSWER:** Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

78.    Thereafter, Experian failed to correct or delete the deceased notation appearing in Plaintiff's credit file.

**ANSWER:** Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against

it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

79.    Experian failed to conduct a reasonable reinvestigation of Plaintiff's March 2022 dispute, or any reinvestigation whatsoever, to determine whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

**ANSWER:**  Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

80.    Defendant AMEX violated 15 U.S.C. § 1681s-2(b) by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to remove the deceased notation(s) from Plaintiff's credit file.

**ANSWER:**  Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

81.    Upon information and belief, thereafter, Experian failed to correct or delete the deceased notation appearing in Plaintiff's credit report and continued to report him as deceased.

**ANSWER:** Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

82. Rather, in or around April 2022, Experian added *another* deceased notation into Plaintiff's credit file.

**ANSWER:** Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

83. Specifically, Experian was reporting the following account with a deceased notation:

>   (a)   American Express
>         Account Number: xxxx-xxxx-xxxx-xxxx
>         Date Opened: March 19, 2018
>         Responsibility: Deceased
>         Payment Status: Consumer reported as deceased

**ANSWER:** Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

84. Again, Experian's deceased reporting was patently inaccurate because Plaintiff is alive.

**ANSWER:** Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against

it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

### Plaintiff Obtains His Credit Reports and Confirms Trans Union is Reporting him as Deceased

85.   In or around May 2022, and in preparation for his anticipated mortgage application, Plaintiff viewed his Trans Union credit file.

**ANSWER:**   Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of the these allegations, which has the effect of a denial under Rule 8(b)(5).

86.   Much to his shock, surprise, confusion, and frustration, Plaintiff learned that Trans Union was reporting him as deceased.

**ANSWER:**   Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

87.   Specifically, Trans Union was reporting the following account with a deceased notation:

> American Express
> Account Number: xxxx-xxxx-xxxx-xxxx
> Date Opened: March 19, 2018
> Remarks: Deceased

**ANSWER:**   Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

88.   Trans Union also marked the following account as "undesignated:"

American Express
Account Number: xxxx-xxxx-xxxx-xxxx
Date Opened: March 19, 2018
Responsibility: Undesignated

**ANSWER:** Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

89. Trans Union's reporting was grossly inaccurate: Plaintiff was not, and is not, deceased.

**ANSWER:** Trans Union denies the allegations contained in this paragraph that Trans Union's reporting was "grossly inaccurate." Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

90. Trans Union's deceased reporting was patently inaccurate because Plaintiff is alive.

**ANSWER:** Trans Union denies the allegations contained in this paragraph.

91. Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy of the credit information it published and maintained concerning Plaintiff.

**ANSWER:** Trans Union denies the allegations contained in this paragraph.

**Plaintiff's First Dispute to Trans Union Regarding the Inaccurate Credit Reporting in May 2022**

92.     In or about May 2022, extremely shocked, surprised, and embarrassed at Trans Union's inaccurate reporting, Plaintiff disputed, with Trans Union, the deceased notation that it was reporting on his credit reports.

**ANSWER:**   Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

93.     Plaintiff's dispute alerted Trans Union to the fact that the deceased notation on his credit file was inaccurate as he was alive, evidenced by his dispute, among other things.

**ANSWER:**   Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

94.     Plaintiff requested that Trans Union reinvestigate the disputed information, correct the reporting, and for Trans Union to send him a corrected copy of his credit report.

**ANSWER:**   Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

95.     Upon information and belief, shortly thereafter, Trans Union removed the deceased notation from Plaintiff's credit file.

**ANSWER:** Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

96. However, Trans Union then reported "undesignated" in the "responsibility field" of *both* the March 19, 2018 and March 24, 2021 American Express accounts.

**ANSWER:** Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

### The Credit Bureau Defendants' Method for Considering Consumer Credit Report Disputes

97. The credit industry has constructed a method of numeric-alpha codes for considering consumer credit report disputes. *See* 15 U.S.C. § 1681i(a)(5)(D).

**ANSWER:** Trans Union states that the cited provision of the FCRA speaks for itself. To the extent Plaintiff misquotes or mischaracterizes the requirements set forth therein, Trans Union denies the allegations as stated.

98. The credit bureaus, Equifax, Experian, Trans Union, and Innovis, have thus created the Online Solution for Complete and Accurate Reporting, or e-OSCAR, as the credit industries' standard of performance. E-OSCAR allows the credit bureaus to create and data furnishers to respond to disputes initiated by consumers by routing credit reporting agency-created prompts for automated consumer dispute verifications to the appropriate data furnishers. E-OSCAR utilizes a numeric-alpha language specific to the credit reporting industry.

**ANSWER:** As Plaintiff's allegations are stated and absent a proper definition of the terms employed, Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of the remaining allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

99.    That lexicon or unique language is commonly referred to in the credit reporting industry as "Metro II."

**ANSWER:** Trans Union states that the Metro 2® Format speaks for itself. To the extent that Plaintiff misquotes or mischaracterizes the features of the Metro 2® Format, Trans Union denies the allegations as stated.

100.    It is also known industry wide as the CDIA's "Credit Reporting Resource Guide."

**ANSWER:** Trans Union states that the Consumer Reporting Resource Guide speaks for itself. To the extent that Plaintiff misquotes or mischaracterizes the features of the Consumer Reporting Resource Guide, Trans Union denies the allegations as stated.

101.    Metro II is driven by numeric codes that translate into specific alpha representations about consumers' creditworthiness and character that will ultimately appear on credit reports issued to third parties who make credit, insurance, rental, and employment decisions regarding consumers.

**ANSWER:**   Trans Union states that the Metro 2® Format speaks for itself.  To the extent that Plaintiff misquotes or mischaracterizes the features of the Metro 2® Format, Trans Union denies the allegations as stated.

102.   Metro II codes are used on an industry wide form known within the credit industry as an Automated Consumer Dispute Verification ("ACDV") electronic form.

**ANSWER:**   Trans Union states that the Metro 2® Format speaks for itself.  To the extent that Plaintiff misquotes or mischaracterizes the features of the Metro 2® Format, Trans Union denies the allegations as stated.

103.   The ACDVs have many fields in their body for use in effecting thorough and complete communications between data furnishers and the credit reporting agencies.

**ANSWER:**   As Plaintiff's allegations are stated and absent a proper definition of the terms employed, Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of the remaining allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

104.   These ACDV "fields" have various titles for the many substantive areas into which the Metro II codes can be entered.

**ANSWER:**   As Plaintiff's allegations are stated and absent a proper definition of the terms employed, Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of the remaining allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks

knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

105.    Upon receiving a dispute from a consumer, the credit bureaus have an automated system that prepares ACDVs that are sent to each of the data furnishers that are reporting the credit accounts disputed by a consumer.

**ANSWER:**    As Plaintiff's allegations are stated and absent a proper definition of the terms employed, Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of the remaining allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

106.    The data furnishers, like Defendant AMEX, then have an obligation under the FCRA to conduct a reasonable reinvestigation with respect to the disputed credit account and review all relevant information provided by the consumer with the dispute to determine whether the disputed credit account information is accurate and/or belongs to the disputing consumer.  *See* 15 U.S.C. § 1681s-2(b).

**ANSWER:**    Trans Union states that the cited provision of the FCRA speaks for itself.  To the extent Plaintiff misquotes or mischaracterizes the requirements set forth therein, Trans Union denies the allegations as stated.  Trans Union states that the remaining allegations of this paragraph are legal conclusions and, so stating, denies them.

107.    Once the data furnisher completes its reinvestigation, it will code the ACDV accordingly, representing either that the disputed account was verified as accurate and

belonging to the disputing consumer, updating information related to the account, or deleting the account entirely, and return the ACDV to the respective credit bureau(s) via e-OSCAR.

**ANSWER:** As Plaintiff's allegations are stated and absent a proper definition of the terms employed, Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of the remaining allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

## Plaintiff Applies for a Mortgage with Cross Country Mortgage in June 2022

108.    In or around June 2022, Plaintiff began searching for a mortgage financing company to finance the purchase of a new home.

**ANSWER:** Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

109.    In or around June 2022, Plaintiff began inquiring with Cross Country Mortgage about their mortgage products.

**ANSWER:** Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

110.    In or around June 2022, Plaintiff worked with a representative at Cross Country Mortgage and discussed various mortgage options to find the mortgage terms that best suited his needs.

**ANSWER:**   Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

111.    In or around June 2022, Plaintiff worked with a representative at Cross Country Mortgage and completed and submitted a credit application with Cross Country Mortgage to obtain financing for the purchase of a home.

**ANSWER:**   Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

112.    The representative at Cross Country Mortgage collected all of Plaintiff's personal identification information, including his social security number, and ordered his credit reports and/or credit scores in order to determine Plaintiff's credit eligibility for financing purposes.

**ANSWER:**   Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

**Cross Country Mortgage Denies Plaintiff's Mortgage Application June 2022**

113.    Shortly after submitting his credit application, the representative informed Plaintiff that Cross Country Mortgage was unable to approve Plaintiff for credit because

the Credit Bureau Defendants were reporting him as deceased on his credit reports, and consequently, the Credit Bureau Defendants were not reporting a credit score for Plaintiff.

**ANSWER:**   Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5).   Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

114.   In or around June 2022, Cross Country Mortgage denied Plaintiff's credit application based upon the contents of the Credit Bureau Defendants' credit reports sold about Plaintiff.

**ANSWER:**   Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

115.   Due to the Credit Bureau Defendants' inaccurate reporting, Plaintiff was not offered any mortgage to purchase the home he needed.

**ANSWER:**   Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

116.   Despite his best efforts, Plaintiff was unable to secure a mortgage from Cross Country Mortgage and could not purchase the house he was interested in.

**ANSWER:**   Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

117.   Ultimately, Plaintiff and his significant other purchased a smaller condo, as opposed to a house.  This was because the deceased reporting rendered Plaintiff ineligible to secure a mortgage and his income could not be accounted for in their purchasing power. Instead of both being on the mortgage, the mortgage was in Plaintiff's significant other's name only.

**ANSWER:**   Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5).  Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

118.   This caused tension between Plaintiff and his significant other who had hoped to purchase a house where they could raise their family and have additional space, including a yard.

**ANSWER:**   Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

119.   Thereafter, Plaintiff refrained from applying for credit, despite desiring to do so, out of sheer fear that the inaccurate reporting would result in additional credit denials and harm to his credit.

**ANSWER:**   Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

### Plaintiff's Second Dispute to Experian Regarding the Inaccurate Credit Reporting in the Summer of 2022

120.   On at least one occasion in or around summer 2022, extremely shocked, surprised, and embarrassed at Experian's continued inaccurate reporting, which had ultimately caused the mortgage denial, Plaintiff disputed the inaccurate deceased notation with Experian.

**ANSWER:**   Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

121.   Plaintiff's dispute again alerted Experian to the fact that the deceased notation on his credit file was inaccurate as he was alive, evidenced by his dispute, among other things.

**ANSWER:**   Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

122.   Plaintiff requested that Experian reinvestigate the disputed information, correct the reporting, and for Experian to send him a corrected copy of his credit report.

**ANSWER:**   Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

123.   Despite Plaintiff's efforts, not until September 2022, did Experian remove the deceased notation from his file.

**ANSWER:**   Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

### Experian Reinserted the Deleted Information into Plaintiff's File

124.   Sometime in or around late-September 2022, Experian reinserted the inaccurate information that Plaintiff disputed on at least two occasions in 2022.

**ANSWER:**   Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

125.   Specifically, Experian reinserted a deceased notation to Plaintiff's file in relation to the March 24, 2021 American Express account.

**ANSWER:**   Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

126.   Plaintiff had previously disputed the deceased notations in 2022 on at least two occasions.

**ANSWER:** Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

127. And upon information and belief, Experian finally deleted the deceased notations in or around September 2022.

**ANSWER:** Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

128. However, when Plaintiff reviewed his Experian credit file in or around late September 2022, he saw that Experian was once again reporting him as deceased.

**ANSWER:** Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

129. Experian failed to notify Plaintiff of the reinsertion in writing as required by 15 U.S.C. § 1681i(a)(5)(B)(ii) and (iii).

**ANSWER:** Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

130.   Experian reinserted the inaccurate deceased notation into Plaintiff's file in violation of 15 U.S.C. § 1681i(a)(5)(B)(i).

**ANSWER:**   Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

131.   Experian failed to maintain reasonable procedures designed to prevent the reappearance in a consumer's file of information that is deleted pursuant to 15 U.S.C. 1681i.

**ANSWER:**   Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

### Trans Union Reinserted the Deleted Information into Plaintiff's File

132.   Sometime, in or around November 2022, Trans Union reinserted the inaccurate information that Plaintiff disputed in or around May 2022.

**ANSWER:**   Trans Union denies that it violated the FCRA (or any other law). Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

133.   Specifically, Trans Union reinserted a deceased notation to Plaintiff's file in relation to the March 24, 2021 American Express account.

**ANSWER:** Trans Union denies that it violated the FCRA (or any other law). Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

134. Trans Union continued to report "undesignated" in the responsibility field of the March 19, 2018 American Express account.

**ANSWER:** Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

135. Plaintiff had previously disputed the deceased notation in May 2022. And upon information and belief, Trans Union deleted the deceased notation in response to Plaintiff's dispute.

**ANSWER:** Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

136. When Plaintiff reviewed his Trans Union credit file in or around November 2022, he saw that Trans Union was once again reporting him as deceased.

**ANSWER:** Trans Union denies that it violated the FCRA (or any other law). Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

137. Trans Union failed to notify Plaintiff of the reinsertion in writing as required by 15 U.S.C. § 1681i(a)(5)(B)(ii) and (iii).

**ANSWER:** Trans Union denies the allegations contained in this paragraph.

138. Trans Union reinserted the inaccurate deceased notation into Plaintiff's file in violation of 15 U.S.C. § 1681i(a)(5)(B)(i).

**ANSWER:** Trans Union denies the allegations contained in this paragraph.

139. Trans Union failed to maintain reasonable procedures designed to prevent the reappearance in a consumer's file of information that is deleted pursuant to 15 U.S.C. 1681i.

**ANSWER:** Trans Union denies the allegations contained in this paragraph.

140. Plaintiff reasonably believes that Defendant AMEX continued to furnish data to the national credit bureaus inaccurately suggesting that Plaintiff was deceased.

**ANSWER:** Trans Union denies the allegations of this paragraph as they apply to Trans Union. Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

141. Plaintiff reasonably believes that the Credit Bureau Defendants continued to publish that he was deceased in the credit reports they each issued about him.

**ANSWER:** Trans Union denies the allegations of this paragraph as they apply to Trans Union. Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against

it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

142.   As a result of the "deceased" notation(s), the Defendants made it practically impossible for Plaintiff to obtain credit.

**ANSWER:**   Trans Union denies the allegations of this paragraph as they apply to Trans Union.  Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

143.   At all times pertinent hereto, Defendants were acting by and through their agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

**ANSWER:**   Trans Union states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

144.   At all times pertinent hereto, the conduct of Defendants, as well as that of their respective agents, servants, and/or employees, was intentional, willful, reckless, grossly negligent and in utter disregard for federal law and the rights of Plaintiff herein.

**ANSWER:**   Trans Union denies the allegations of this paragraph as they apply to Trans Union.  Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against

it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

145.   As a standard practice, the Credit Bureau Defendants do not conduct independent investigations in response to consumer disputes.  Instead, they merely parrot the response of the credit furnisher, like AMEX here, despite numerous court decisions admonishing this practice.  *See Cushman v. Trans Union Corp.,* 115 F.3d 220, 225 (3d Cir. 1997) (The 'grave responsibility[y]' imposed by § 1681(a) must consist of something more than merely parroting information received from other sources.   Therefore, a 'reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute."); *Apodaca v. Discover Fin. Servs.,* 417 F. Supp. 2d 1220, 1230-31 (D.N.M. 2006) (noting that credit reporting agencies may not rely on automated procedures that make only superficial inquiries once the consumer has notified it that information is disputed); *Gorman v. Experian Info. Sols., Inc.,* 2008 WL 4934047, at *6 (S.D.N.Y. Nov. 19, 2008).

**ANSWER:**   Trans Union states that Cushman v. Trans Union Corp., Apodaca v. Discover Fin. Servs., and Gorman v. Experian Info. Sols. Inc. speak for themselves. Trans Union denies the allegations of this paragraph as they apply to Trans Union.  Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

146.    The Credit Bureau Defendants are aware of the shortcomings of their procedures and intentionally choose not to comply with the FCRA to lower their costs. Accordingly, the Credit Bureau Defendants' violations of the FCRA are willful.

**ANSWER:**   Trans Union denies the allegations of this paragraph as they apply to Trans Union.  Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

147.    As a result of Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from his credit; detriment to his credit rating; the expenditure of time disputing and trying to correct the inaccurate credit reporting; sleepless nights; and emotional distress including the mental and emotional pain, anxiety, anguish, humiliation, and embarrassment of credit denials.

**ANSWER:**   Trans Union denies the allegations of this paragraph as they apply to Trans Union.  Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

**CLAIMS FOR RELIEF**

**COUNT I**
**15 U.S.C. § 1681e(b)**
**Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy**
**(First Claim for Relief Against Defendants Experian, and Trans Union)**

148.   Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

**ANSWER:**   Trans Union reasserts its answers and responses set forth herein.

149.   The FCRA imposes a duty on consumer reporting agencies to devise and implement procedures to ensure the "maximum possible accuracy" of consumer reports, as follows:

> Whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure ***maximum possible accuracy*** of the information concerning the individual about whom the report relates.

15 U.S.C. §1681e(b) (emphasis added).

**ANSWER:**   Trans Union states that the cited provision of the FCRA speaks for itself.  To the extent Plaintiff misquotes or mischaracterizes the requirements set forth therein, Trans Union denies the allegations as stated. Trans Union states that the remaining allegations of this paragraph are legal conclusions and, so stating, denies them.

150.   On numerous occasions, the Credit Bureau Defendants prepared patently false consumer reports concerning Plaintiff.

**ANSWER:**   Trans Union denies the allegations of this paragraph as they apply to Trans Union.  Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against

it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

151.   Despite actual and implied knowledge that Plaintiff is not dead, the Credit Bureau Defendants readily sold such false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately Plaintiff's creditworthiness.

**ANSWER:**   Trans Union denies the allegations of this paragraph as they apply to Trans Union.  Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

152.   Defendant Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

**ANSWER:**   Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

153.   Defendant Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

**ANSWER:**   Trans Union denies the allegations contained in this paragraph.

154.   As a result of the Credit Bureau Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from his credit; detriment to his credit rating; the expenditure of time disputing and trying to correct the inaccurate credit reporting; sleepless nights; and emotional distress including the mental and emotional pain, anxiety, anguish, humiliation, and embarrassment of credit denials.

**ANSWER:**   Trans Union denies the allegations of this paragraph as they apply to Trans Union.  Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

155.   The Credit Bureau Defendants' conduct, actions, and inactions were willful, rendering them individually liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

**ANSWER:**   Trans Union denies the allegations of this paragraph as they apply to Trans Union. Trans Union denies that Plaintiff is entitled to any damages, costs, fees, or other relief from or against Trans Union. Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

156.   Plaintiff is entitled to recover attorneys' fees and costs from the Credit Bureau Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**ANSWER:**   Trans Union denies the allegations of this paragraph as they apply to Trans Union. Trans Union denies that Plaintiff is entitled to any damages, costs, fees, or other relief from or against Trans Union. Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

**COUNT II**
**15 U.S.C. § 1681i Failure to Perform a Reasonable Reinvestigation**
**(Second Claim for Relief Against Defendant Experian)**

157.   Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

**ANSWER:**   Trans Union reasserts its answers and responses set forth herein.

158.   The FCRA mandates that a CRA conducts an investigation of the accuracy of information "[I]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer.  *See* 15 U.S.C. § 1681i(a)(1).  The Act imposed a 30-day time limit for the completion of such an investigation.  *Id.*

**ANSWER:**   Trans Union states that the cited provision of the FCRA speaks for itself.  To the extent Plaintiff misquotes or mischaracterizes the requirements set forth therein, Trans Union denies the allegations as stated.

159.    The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is in fact inaccurate or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file.  *See* 15 U.S.C. § 1681i(a)(5)(A).

**ANSWER:**  Trans Union states that the cited provision of the FCRA speaks for itself.  To the extent Plaintiff misquotes or mischaracterizes the requirements set forth therein, Trans Union denies the allegations as stated.

160.    On at least two occasions during 2022, Plaintiff disputed the inaccurate information with Experian and requested that it delete a specific item in his credit file that is patently inaccurate, misleading, and highly damaging to him, namely, stating that he is "deceased."

**ANSWER:**  Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

161.    In response to Plaintiff's dispute, Experian failed to conduct a reinvestigation, or such investigation was so shoddy as to allow patently false, logically inconsistent, and damaging information to remain in Plaintiff's credit file.

**ANSWER:**  Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

162. Experian violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which it received the notices of dispute from Plaintiff; and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file.

**ANSWER:**  Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

163. As a result of Experian's conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from his credit; detriment to his credit rating; the expenditure of time disputing and trying to correct the inaccurate credit reporting; sleepless nights; and emotional distress including the mental and emotional pain, anxiety, anguish, humiliation, and embarrassment of credit denials.

**ANSWER:**  Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

164. Experian's conduct, actions, and inactions were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by

the Court pursuant to 15 U.S.C. § 1681n. Alternatively, it was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

**ANSWER:** Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

165. Plaintiff is entitled to recover attorneys' fees and costs from Defendant Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**ANSWER:** Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

## COUNT III
### 15 U.S.C. § 1681i
**Failure to Prevent Reinsertion and Failure to Notify Consumer of Reinsertion and Failure to Maintain Reasonable Procedures to Prevent Reinsertion (Third Claim for Relief Against Defendant Experian and Second Claim for Relief Against Defendant Trans Union)**

166. Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

**ANSWER:** Trans Union reasserts its answers and responses set forth herein.

167. The FCRA mandates that if a CRA deletes information from a consumer's file pursuant to a dispute, the information must not be reinserted in the file by the CRA

unless the furnisher certified that the information is complete and accurate. *See* 15 U.S.C. § 1681i(a)(5)(B)(i).

**ANSWER:** Trans Union states that the cited provision of the FCRA speaks for itself. To the extent Plaintiff misquotes or mischaracterizes the requirements set forth therein, Trans Union denies the allegations as stated.

168. Further, that if any disputed information that has been deleted from a consumer's file is reinserted in the file, the CRA shall notify the consumer of the reinsertion in writing not later than five (5) business days after the reinsertion. *See* 15 U.S.C. § 1681i(a)(5)(B)(ii).

**ANSWER:** Trans Union states that the cited provision of the FCRA speaks for itself. To the extent Plaintiff misquotes or mischaracterizes the requirements set forth therein, Trans Union denies the allegations as stated.

169. Further, the CRAs are required to maintain reasonable procedures designed to prevent the reappearance (or reinsertion) in a consumer's file, and in consumer reports on the consumer, of deleted disputed information. *See* 15 U.S.C. § 1681i(a)(5)(C).

**ANSWER:** Trans Union states that the cited provision of the FCRA speaks for itself. To the extent Plaintiff misquotes or mischaracterizes the requirements set forth therein, Trans Union denies the allegations as stated.

170. Upon information and belief, Experian reinserted the deceased notation to Plaintiff's file in or around September 2022 after having previously deleted the same in response to Plaintiff's dispute and absent a certification of completeness and accuracy by AMEX.

**ANSWER:** Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

171.   Upon information and belief, Trans Union reinserted the deceased notation to Plaintiff's file in or around November 2022 after having previously deleted the same in response to Plaintiff's dispute and absent a certification of completeness and accuracy by AMEX.

**ANSWER:** Trans Union denies that it violated the FCRA (or any other law). Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

172.   Further, neither of the Credit Bureau Defendants notified the Plaintiff in writing within five (5) business days, much less at all, after the reinsertion.

**ANSWER:** Trans Union denies that it violated the FCRA (or any other law). Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).  Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

173.   Neither of the Credit Bureau Defendants maintain reasonable procedures designed to prevent the reappearance in a consumer's file of deleted disputed information absent a certification of completeness and accuracy by the Furnisher of that information.

**ANSWER:**   Trans Union denies the allegations of this paragraph as they apply to Trans Union.  Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

174.   The Credit Bureau Defendants violated 15 U.S.C. § 1681i(a)(5) by reinserting deleted disputed information to Plaintiff's file absent a certification from AMEX that the information was complete and accurate; by failing to notify the Plaintiff in writing after the reinsertion; and by failing to maintain reasonable procedures designed to prevent the reappearance of deleted disputed information absent a certification of completeness and accuracy by AMEX.

**ANSWER:**   Trans Union denies the allegations of this paragraph as they apply to Trans Union.  Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

175.   As a result of the Credit Bureau Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from his credit; detriment to his credit rating; the expenditure of time disputing and trying to correct the inaccurate credit reporting; sleepless nights; and emotional distress including the mental and emotional pain, anxiety, anguish, humiliation, and embarrassment of credit denials.

**ANSWER:** Trans Union denies the allegations of this paragraph as they apply to Trans Union. Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

176. The Credit Bureau Defendants' conduct, actions, and inactions were willful, rendering them individually liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

**ANSWER:** Trans Union denies the allegations of this paragraph as they apply to Trans Union. Trans Union denies that Plaintiff is entitled to any damages, costs, fees, or other relief from or against Trans Union. Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

177. Plaintiff is entitled to recover attorneys' fees and costs from the Credit Bureau Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**ANSWER:** Trans Union denies the allegations of this paragraph as they apply to Trans Union. Trans Union denies that Plaintiff is entitled to any damages, costs, fees, or other relief from or against Trans Union. Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute

allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

**COUNT IV**
**15 U.S.C. § 1681s-2b**
**Failure to Conduct an Investigation of the Disputed Information and Review**
**all Relevant Information Provided by the Consumer**
**(Only Claim for Relief Against Defendant AMEX)**

178.   Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

**ANSWER:**   Trans Union reasserts its answers and responses set forth herein.

179.   Defendant AMEX furnished inaccurate information relating to Plaintiff to the national credit bureaus, including but not limited to Experian and Trans Union.

**ANSWER:**   Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

180.   Defendant AMEX violated 15 U.S.C. § 1681s-2(b) by failing to investigate Plaintiff's dispute(s), or otherwise by failing to fully and properly investigate Plaintiff's dispute(s), including but not limited to failing to review all relevant information regarding the same; by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the inaccurate information relating to Plaintiff to the national credit bureaus, including but not limited to Experian and Trans Union; and, by failing to cease furnishing inaccurate information relating to Plaintiff to the national credit bureaus, including but not limited to Experian Trans Union.

**ANSWER:** Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

181. As a result of Defendant AMEX's conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from his credit; detriment to his credit rating; the expenditure of time disputing and trying to correct the inaccurate credit reporting; sleepless nights; and emotional distress including the mental and emotional pain, anxiety, anguish, humiliation, and embarrassment of credit denials.

**ANSWER:** Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

182. Defendant AMEX's conduct, actions, and inactions were willful, rendering it individually liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, it was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

**ANSWER:** Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

183.   Plaintiff is entitled to recover attorneys' fees and costs from Defendant AMEX in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**ANSWER:**   Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for the following relief:

i.      Determining that Defendants negligently and/or willfully violated the FCRA;

ii.     Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

iii.    Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

iv.     Granting further relief, in law or equity, as this Court may deem appropriate and just.

**ANSWER:**   Trans Union denies that Plaintiff is entitled to any damages, costs, fees, or other relief from or against Trans Union.

## DEMAND FOR JURY TRIAL

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

**ANSWER:**   Trans Union denies that the statements contained in this paragraph require a response from Trans Union.

## **<u>AFFIRMATIVE DEFENSES</u>**

1.  Plaintiff has failed to state a claim against Trans Union upon which relief may be granted.

2.  Trans Union has at all times followed reasonable procedures to assure maximum possible accuracy of its credit reports concerning Plaintiff.

3.  Plaintiff's claims are barred, in whole, or in part, by the equitable theory of estoppel.

4.  Plaintiff has failed to take reasonable steps to mitigate his damages, if any.

5.  Plaintiff's damages are the result of acts or omissions committed by Plaintiff.

6.  Plaintiff's damages are the result of acts or omissions committed by the other parties over whom Trans Union has no responsibility or control.

7.  Plaintiff's damages are the result of acts or omissions committed by non-parties to this action over whom Trans Union has no responsibility or control.

WHEREFORE, Defendant Trans Union, LLC, by counsel, denies that Plaintiff is entitled to judgment or to any of the relief sought, and respectfully requests that judgment be entered in its favor and against Plaintiff on all counts set forth in the Complaint, and that Trans Union, LLC, be awarded its costs incurred in defending this action, along with such other relief as this Court deems equitable and just.

Respectfully submitted,


Date:  March 1, 2023          /s/ Che'lee A. John
                             Che'lee A. John, Esq. (IN #35024-06)
                                (admitted *Pro Hac Vice*)
                             Schuckit & Associates, P.C.
                             4545 Northwestern Drive
                             Zionsville, IN  46077
                             Telephone:  (317) 363-2400, Ext. 113
                             Fax:  (317) 363-2257
                             E-Mail:  cjohn@schuckitlaw.com

                             *Lead Counsel for Defendant TransUnion LLC*