**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| REGINALD MERCHANT,<br><br>       Plaintiff,<br><br>    v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC., TRANS UNION, LLC, AND, AMERICAN EXPRESS COMPANY,<br><br>       Defendants. | Civil Action No.:  0:23-cv-00314 |

**DEFENDANT EXPERIAN INFORMATION SOLUTIONS, INC.'S**
**ANSWER TO PLAINTIFF'S COMPLAINT AND AFFIRMATIVE DEFENSES**

Defendant Experian Information Solutions, Inc. by its undersigned counsel answers the Complaint filed by Plaintiff Reginald Merchant as follows, while reserving the right to supplement or amend this answer based on future investigation or discovery:

**INTRODUCTION**

1.  The computerization of our society has resulted in a revolutionary increase in the accumulation and processing of data concerning individual American consumers. Data technology, whether it is used by businesses, banks, the Internal Revenue Service, or other institutions, allows information concerning individual consumers to flow instantaneously to requesting parties.  Such timely information is intended to lead to faster and better decision-making by its recipients and, in theory, all of society should ultimately benefit from the resulting convenience and efficiency.

**ANSWER:**  In response to this Paragraph, Experian is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, on that basis, denies, generally and specifically, each and every allegation contained therein.

2.    However, unfortunately this information has also become readily available for, and subject to, mishandling and misuse. Individual consumers can and do sustain substantial damage, both economically and emotionally, whenever inaccurate or fraudulent information is disseminated and/or obtained about them. In fact, the Credit Bureau Defendants acknowledge this potential for misuse and resulting damage every time they sell their respective credit monitoring services to a consumer.

**ANSWER:** In response to this Paragraph, Experian is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, on that basis, denies, generally and specifically, each and every allegation contained therein.

3.    The ongoing technological advances in the area of data processing have resulted in a boon for the companies that accumulate and sell data concerning individuals' credit histories and other personal information. Such companies are commonly known as consumer reporting agencies ("CRAs").

**ANSWER:** In response to this Paragraph, Experian is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, on that basis, denies, generally and specifically, each and every allegation contained therein.

4.    These CRAs sell information to readily paying subscribers (i.e., retailers, landlords, lenders, potential employers, and other similar interested parties), commonly called "consumer reports," concerning individuals who may be applying for retail credit, housing, employment, or a car or mortgage loan.

**ANSWER:** In response to this Paragraph, Experian admits that "consumer reporting agencies" as defined by 15 U.S.C. § 1681a(f) issue consumer reports as defined by 15 U.S.C. § 1681a(d). Except as specifically admitted, Experian is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, on that basis, denies, generally and specifically, each and every allegation contained therein.

2

5. Since 1970, when Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. ("FCRA"), federal law has required CRAs to implement and utilize reasonable procedures "to assure maximum possible accuracy" of the personal, private, and financial information that they compile and sell about individual consumers.

**ANSWER:** In response to this Paragraph, , Experian admits that the allegations contained therein appear to set forth a portion of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"). Experian affirmatively states that the FCRA speaks for itself, and, on that basis, denies any allegations of this Paragraph inconsistent therewith.

6. One of the primary purposes in requiring CRAs to assure "maximum possible accuracy" of consumer information is to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

See 15 U.S.C. § 1681(a)(1).

**ANSWER:** In response to this Paragraph, Experian admits that the allegations contained therein appear to set forth a portion of the FCRA. Experian affirmatively states that the FCRA speaks for itself, and, on that basis, denies any allegations of this Paragraph inconsistent therewith.

7. The preservation of one's good name and reputation is also at the heart of the FCRA's purposes:

> [W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as deny him the opportunity to obtain a mortgage or buy a home. We are not nearly as much concerned over the

> possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his good name without his knowledge and without reason. Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed.

Bryant v. TRW, Inc., 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 cong. Rec. 36570 (1970)] (emphasis added).

**ANSWER:** In response to this Paragraph, Experian admits that the allegations contained therein appear to set forth a statement or conclusion of law. To the extent the allegations are contrary to the law, Experian denies the allegations.

8. The FCRA also requires CRAs to conduct a reasonable reinvestigation to determine whether information disputed by consumers is inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which the CRA receives the notice of dispute from the consumer. This mandate exists to ensure that consumer disputes are handled in a timely manner and that inaccurate information contained within a consumer's credit report is corrected and/or deleted so as to not prevent said consumer from benefiting from his or her credit and obtaining new credit,

**ANSWER:** In response to this Paragraph, Experian admits that the allegations contained therein appear to describe a portion of the FCRA. Experian states that the FCRA speaks for itself and, on that basis, denies any allegations inconsistent therewith.

9. In light of these important findings and purposes, Congress specifically noted "a need to insure that [CRAs] exercise their grave responsibilities with fairness, impartiality, and respect for the consumer's right to privacy." See 15 U.S.C. § 1681(a)(4).

**ANSWER:** In response to this Paragraph, Experian admits that the allegations contained therein appear to set forth a portion of the FCRA. Experian states that the FCRA speaks for itself and, on that basis, denies any allegations inconsistent therewith.

10. The FCRA also requires furnishers of information, a creditor or other third party that provides information about consumer to a CRA, upon notice, to conduct a

4

reasonable reinvestigation of all disputes with regard to the completeness or accuracy of any information it provides to the CRAs regarding a consumer and modify, delete, or permanently block any items of information found to be inaccurate, incomplete, or unverifiable after said reinvestigation is completed.

**ANSWER:** In response to this Paragraph, Experian admits that the allegations contained therein appear to describe a portion of the FCRA. Experian states that the FCRA speaks for itself and, on that basis, denies any allegations inconsistent therewith.

11. Plaintiffs claims arise out of the Credit Bureau Defendants' blatantly inaccurate credit reporting, wherein the Credit Bureau Defendants reported to Plaintiffs potential creditors that he is "deceased" and does not have a credit score.

**ANSWER:** In response to this Paragraph, Experian denies, generally and specifically, the allegations contained therein that pertain to Experian. Regarding allegations against other defendants, Experian states that it lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

12. Accordingly, Plaintiff brings claims against the Credit Bureau Defendants for failing to follow reasonable procedures to assure the maximum possible accuracy of Plaintiffs credit reports, in violation of the FCRA, 15 U.S.C. § 1681e(b), and failing to conduct a reasonable reinvestigation to determine whether information Plaintiff disputed was inaccurate and record the current status of the disputed information, or delete the disputed information from Plaintiffs credit file, in violation of the FCRA, 15 U.S.C. § 168li.

**ANSWER:** In response to this Paragraph, Experian denies, generally and specifically, the allegations contained therein that pertain to Experian. Regarding allegations against other defendants, Experian states that it lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

5

13.     Plaintiff also brings a claim against Defendant American Express for failing to fully and properly reinvestigate Plaintiffs disputes and review all relevant information provided by Plaintiff and the Credit Bureau Defendants, in violation of the FCRA, 15 U.S.C. § 1681s-2(b)(1).

**ANSWER:** In response to this Paragraph, Experian states that it lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

14.     As part of this action, Plaintiff seeks actual, statutory, and punitive damages, costs and attorneys' fees from Defendants for their willful and/or negligent violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq., as described herein.

**ANSWER:** In response to this Paragraph, Experian denies, generally and specifically, the allegations contained therein that pertain to Experian and denies that Plaintiff is entitled to any relief.

## PARTIES

15.     Reginald Merchant ("Plaintiff" or "Mr. Merchant") is a natural person residing in Brooklyn Park, Minnesota, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

**ANSWER:** In response to this Paragraph, Experian states that it lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein. Experian further states that this is a legal conclusion not subject to admission or denial.

16.     Defendant Experian Information Solutions, Inc. ("Defendant Experian" or "Experian") is a corporation with a principal place of business located at 701 Experian Pkwy, Allen, Texas 75013, and is authorized to do business in the State of Minnesota, including within this District.

6

**ANSWER:** In response to this Paragraph, Experian admits that it is an Ohio corporation. Experian further admits that it is authorized to do business in the State of New York. Except as specifically admitted, Experian states that it lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies, generally and specifically, each and every remaining allegation contained in this Paragraph.

17.    Experian is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Experian is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties.

**ANSWER:** In response to this Paragraph, Experian admits that it is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f) and, as such, issues consumer reports as defined by 15 U.S.C. § 1681a(d). Except as specifically admitted, Experian denies, generally and specifically, each and every remaining allegation contained in this Paragraph.

18.    Defendant Trans Union, LLC ("Defendant Trans Union" or "Trans Union") is a limited liability company with a principal place of business located at 2 Baldwin Place, Chester, PA 19022, and is authorized to do business in the State of Minnesota, including within this District.

**ANSWER:** In response to this Paragraph, Experian states that it lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

19.    Trans Union is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Trans Union is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

7

**ANSWER:** In response to this Paragraph, Experian states that it lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

20.    Defendant American Express Company ("Defendant AMEX" or "AMEX") is a multinational financial services corporation with a principal place of business located at 200 Vesey Street, Lower Manhattan, New York, NY 10285, and is authorized to do business in the State of Minnesota, including within this District.

**ANSWER:** In response to this Paragraph, Experian states that it lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

21.    Defendant AMEX is a credit grantor and "furnisher" of consumer information, as defined in 15 U.S.C. § 1681s-2(b).

**ANSWER:** In response to this Paragraph, Experian states that it lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

## JURISDICTION AND VENUE

22.    This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 168Ip, which allow claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

**ANSWER:** In response to this Paragraph, Experian admits that Plaintiff has alleged jurisdiction based on 28 U.S.C. § 1331 and the FCRA. Experian states that this is a legal conclusion not subject to admission or denial. To the extent a further response is required, Experian states that it lacks knowledge or information sufficient to form a belief as to the

8

truth of the allegations in this Paragraph and, on that basis, denies, generally and specifically, each and every allegation contained therein.

23.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs claims occurred in this District.

**ANSWER:**  In response to this Paragraph, Experian admits that Plaintiff has alleged venue in this district is proper pursuant to 28 U.S.C. § 1391(b). Experian states that this is a legal conclusion not subject to admission or denial. To the extent a further response is required, Experian states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and, on that basis, denies, generally and specifically, each and every allegation contained therein.

## FACTS

### Summary of the Fair Credit Reporting Act

24.    The FCRA governs the conduct of consumer reporting agencies in an effort to preserve the integrity of the consumer banking system and to protect the rights of consumers to fairness and accuracy in the reporting of their credit information.

**ANSWER:**  In response to this Paragraph, Experian states that the FCRA speaks for itself and, on that basis, denies any allegations inconsistent therewith.

25.    The FCRA was designed to protect consumers from the harmful effects of inaccurate information reported in consumer reports (commonly referred to as "credit reports").  Thus, Congress enshrined the principles of "fair and accurate credit reporting" and the "need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness" in the very first provision of the FCRA.  See 15 U.S.C. § 1681(a).

9

**ANSWER:**  In response to this Paragraph, Experian admits that the allegations contained therein appear to set forth a portion of the FCRA. Experian states that the FCRA speaks for itself and, on that basis, denies any allegations inconsistent therewith.

26.     Specifically, the statute was intended to ensure that "consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information.  See 15 U.S.C. § 1681(b).

**ANSWER:**  In response to this Paragraph, Experian admits that the allegations contained therein appear to set forth a portion of the FCRA. Experian states that the FCRA speaks for itself and, on that basis, denies any allegations inconsistent therewith.

27.     To that end, the FCRA imposes the following twin duties on consumer reporting agencies:  (i) consumer reporting agencies must devise and implement reasonable procedures to ensure the "maximum possible accuracy" of information contained in consumer reports (15 U.S.C. § 1681e(b)); and (ii) consumer reporting agencies must reinvestigate the facts and circumstances surrounding a consumer's dispute and timely correct any inaccuracies (15 U.S.C. § 1681i).

**ANSWER:**  In response to this Paragraph, Experian admits that the allegations contained therein appear to set forth portions of the FCRA. Experian states that the FCRA speaks for itself and, on that basis, denies any allegations inconsistent therewith.

28.     The FCRA provides consumers with a private right of action against consumer reporting agencies that willfully or negligently fail to comply with their statutory obligations under the FCRA.

**ANSWER:**  In response to this Paragraph, Experian states that the FCRA speaks for itself and, on that basis, denies any allegations inconsistent therewith.

**The Credit Bureau Defendants' Practices
Concerning the Sale of Reports on the "Deceased"**

29.    The Credit Bureau Defendants sell millions of consumer reports (often called "credit reports" or "reports") per day, and also sell credit scores.

**ANSWER:** In response to this Paragraph, Experian states that it lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

30.    Pursuant to 15 U.S.C. § 1681e(b), consumer reporting agencies, like the Credit Bureau Defendants, are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

**ANSWER:** In response to this Paragraph, Experian admits that the allegations contained therein appear to set forth a portion of the FCRA. Experian states that the FCRA speaks for itself and, on that basis, denies any allegations inconsistent therewith.

31.    Pursuant to 15 U.S.C. §§ 1681b and 1681e(a), consumer reporting agencies, like the Credit Bureau Defendants, must maintain reasonable procedures to assure that consumer reports are sold only for legitimate ''permissible purposes."

**ANSWER:** In response to this Paragraph, Experian admits that the allegations contained therein appear to set forth a portion of the FCRA. Experian states that the FCRA speaks for itself and, on that basis, denies any allegations inconsistent therewith.

32.    The Credit Bureau Defendants routinely place a "deceased" notation or marking on reports when it is advised by any of its many data furnishing sources (such as banks, debt collectors, etc.) that a given consumer is deceased.

**ANSWER:** In response to this Paragraph, Experian states that it lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

33.    The Credit Bureau Defendants' furnishing sources identify "deceased" consumers by marking the "status" of such consumer's responsibility for any subject account with an "X" or "U/UNDESIGNATED" code in the "ECOA" field of an electronic data input format used in the credit reporting industry, known as Metro or Metro 2.

**ANSWER:** In response to this Paragraph, Experian states that it lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

34.    The Credit Bureau Defendants do not request or require a death certificate from any of their data sources which advise that a consumer is "deceased" before placing a "deceased" mark in that consumer's credit file.

**ANSWER:** In response to this Paragraph, Experian states that it lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

35.    The Credit Bureau Defendants do not request or require any proof from any data source which advises that a consumer is "deceased," showing that the consumer is in fact deceased before placing a "deceased" mark on that consumer's report.

**ANSWER:** In response to this Paragraph, Experian states that it lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

36.    The Credit Bureau Defendants do not independently verify with any source that a consumer is in fact deceased before placing a "deceased" mark on that consumer's report.

**ANSWER:** In response to this Paragraph, Experian states that it lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

12

37.    In some cases, in order to assure accuracy, the Credit Bureau Defendants may send letters and/or other communications to consumers when certain information that may be considered suspicious or unreliable is furnished about said consumers to be placed in their credit files, such as in cases where consumers have a freeze or fraud alert on their credit report, or in accordance with certain state laws, such as the consumer laws of Colorado.  The Credit Bureau Defendants do not have any procedure to notify consumers (such as a next of kin or executor or administrator of the consumer's estate) when an "X" or "U/UNDESIGNATED" deceased code is furnished to them to be placed in said consumer's credit file or report.

**ANSWER:** In response to this Paragraph, Experian states that it lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

38.    The Credit Bureau Defendants regularly receive the "Death Master File" from the Social Security Administration, listing by social security number those consumers that the government believes to be deceased.  But the Credit Bureau Defendants do not cross-reference the "X", or "U/UNDESIGNATED" code received from data furnishers with the Death Master File in order to determine whether any given consumer reported as deceased via a furnishing source is also on the Death Master File before selling a credit report about said consumer, or at any time.

**ANSWER:** In response to this Paragraph, Experian states that it lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

39.    The Credit Bureau Defendants will only use the Death Master File to sell additional products for an additional fee, which are designed to show whether a given consumer is truly deceased.

**ANSWER:**  In response to this Paragraph, Experian denies, generally and specifically, the allegations contained therein that pertain to Experian. Regarding allegations against other defendants, Experian states that it lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

40.    The Credit Bureau Defendants fail to employ reasonable procedures that assure that a consumer with a "deceased" mark on his/her report is in fact actually deceased before placing the "deceased" mark on that consumer's report and selling that report for profit.

**ANSWER:**  In response to this Paragraph, Experian denies, generally and specifically, the allegations contained therein that pertain to Experian. Regarding allegations against other defendants, Experian states that it lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

41.    Even in instances where other data on the face of the consumer's report indicates that he/she is not deceased, the Credit Bureau Defendants do not employ any procedures to assure that a consumer with a "deceased" mark on his/her report is in fact actually deceased before placing the "deceased" mark in that consumer's file.

**ANSWER:**  In response to this Paragraph, Experian denies, generally and specifically, the allegations contained therein that pertain to Experian. Regarding allegations against other defendants, Experian states that it lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

42.    Even in instances where the purportedly deceased consumer communicates directly with the Credit Bureau Defendants, the Credit Bureau Defendants do not employ any procedures to assure that a consumer with a "deceased" mark on his/her report is in fact actually deceased before placing the "deceased" mark on that consumer's report.

**ANSWER:**  In response to this Paragraph, Experian denies, generally and specifically, the allegations contained therein that pertain to Experian. Regarding allegations against other defendants, Experian states that it lacks knowledge or information sufficient to form a

belief as to the truth of these allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

43.    Once a "deceased" mark is placed upon a consumer's report, the Credit Bureau Defendants will not calculate and will not provide a credit score for that consumer.

**ANSWER:** In response to this Paragraph, Experian states that it lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

44.    Upon the Credit Bureau Defendants' reports with a "deceased" mark sold to third parties, the Credit Bureau Defendants never calculate or provide a credit score for that consumer and instead report that consumer's credit score as "N/A."

**ANSWER:** In response to this Paragraph, Experian states that it lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

45.    The Credit Bureau Defendants know that third party credit issuers require a credit score in order to process a given credit application.

**ANSWER:** In response to this Paragraph, Experian states that it lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

46.    The Credit Bureau Defendants know that consumers without credit scores are unable to secure any credit from most credit issuers.

**ANSWER:** In response to this Paragraph, Experian states that it lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

47.     The Credit Bureau Defendants know that living consumers are routinely turned down for credit specifically because they are reporting them as "deceased" and without a credit score.

**ANSWER:** In response to this Paragraph, Experian states that it lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

48.     The Credit Bureau Defendants have been put on notice for years through consumer disputes and lawsuits that living, breathing consumers are turned down for credit specifically because the Credit Bureau Defendants are inaccurately reporting them as "deceased" and without a credit score.

**ANSWER:** In response to this Paragraph, Experian states that it lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

49.     The Credit Bureau Defendants have received and documented many disputes from consumers complaining that Credit Bureau Defendants had erroneously marked them as "deceased" on their credit reports.

**ANSWER:** In response to this Paragraph, Experian states that it lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

50.     The Credit Bureau Defendants know that thousands of consumers are erroneously marked as "deceased" on their credit reports via an erroneous furnishing of the "X" or "U/UNDESIGNATED" code, even when said consumers are not on the Death Master File and are in fact alive.

**ANSWER:** In response to this Paragraph, Experian states that it lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

16

51.     Nevertheless, the Credit Bureau Defendants do not employ any procedures to assure that a consumer marked as "deceased" on their credit reports is in fact deceased.

**ANSWER:** In response to this Paragraph, , Experian denies, generally and specifically, the allegations contained therein that pertain to Experian. Regarding allegations against other defendants, Experian states that it lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

52.     Even consumers who dispute the erroneous "deceased" status on their credit reports continue to be erroneously marked as deceased unless the furnishing source which provided the erroneous "X" or "U/UNDESIGNATED" code in the first instance decides to change the code.

**ANSWER:** In response to this Paragraph, Experian states that it lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

53.     The Credit Bureau Defendants do not have any independent procedure to change an erroneous deceased status on their own and will merely parrot their furnishing source in the case of a reinvestigation into the accuracy of the deceased status upon a consumer's report, a reinvestigation which is triggered by a consumer dispute.

**ANSWER:**  In response to this Paragraph, Experian denies, generally and specifically, the allegations contained therein that pertain to Experian. Regarding allegations against other defendants, Experian states that it lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

54.     Nor do the Credit Bureau Defendants employ any procedures to limit or stop the furnishing of reports to third parties for consumers that they have marked as ''deceased*' under any circumstances.

17

**ANSWER:**  In response to this Paragraph, Experian denies, generally and specifically, the allegations contained therein that pertain to Experian. Regarding allegations against other defendants, Experian states that it lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

55.    For years after a consumer's actual death, the Credit Bureau Defendants will continue to sell credit reports about that consumer.

**ANSWER:** In response to this Paragraph, Experian states that it lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

56.    The Credit Bureau Defendants will only remove a deceased consumer's file from their respective credit reporting databases when it is no longer valuable to them - meaning that no one is continuing to purchase reports about that consumer.

**ANSWER:** In response to this Paragraph, Experian states that it lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

57.    The Credit Bureau Defendants charge third parties a fee for reports with a mark that a consumer is deceased ("reports on the deceased") as they would for any other report.

**ANSWER:** In response to this Paragraph, Experian states that it lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

58.    The Credit Bureau Defendants profit from the sale of reports on deceased consumers.

**ANSWER:** In response to this Paragraph, Experian states that it lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

59. The Credit Bureau Defendants have in their respective credit reporting databases many "deceased" tradelines corresponding to distinct credit files for individual consumers that they have marked as "deceased."

**ANSWER:** In response to this Paragraph, Experian states that it lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

60. The Credit Bureau Defendants know that truly deceased consumers do not apply for credit.

**ANSWER:** In response to this Paragraph, Experian states that it lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

61. The Credit Bureau Defendants know that the credit information and reports of truly deceased persons are used by criminals to commit identity theft or credit fraud. Indeed, identity theft using the personal identifying information of deceased consumers is known to the Credit Bureau Defendants to be a common and major source of identity theft.

**ANSWER:** In response to this Paragraph, Experian states that it lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

62. The Credit Bureau Defendants know that identity theft and credit fraud are serious and widespread problems in our society.

**ANSWER:** In response to this Paragraph, Experian states that it lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

63.     The Credit Bureau Defendants warn the relatives of truly deceased consumers that identity theft can be committed using the credit reports and information of the deceased and require relatives to provide a death certificate or executorship papers, among other forms of proof, before accessing the deceased consumer's credit information or report.

**ANSWER:** In response to this Paragraph, Experian states that it lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

64.     The Credit Bureau Defendants have no similar death certificate, executorship paper, or any other proof requirements for their data sources, which report a consumer as deceased or for the purchasers of their reports who access the purportedly deceased consumer's information.

**ANSWER:** In response to this Paragraph, Experian states that it lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

65.     The Credit Bureau Defendants sell reports on supposedly deceased consumers to third parties in an automated fashion and without any specific or general certification that could reasonably explain a "permissible purpose" for purchasing or using a (supposedly) deceased consumer's credit history and/or report.

**ANSWER:** In response to this Paragraph, Experian denies, generally and specifically, the allegations contained therein that pertain to Experian. Regarding allegations against other defendants, Experian states that it lacks knowledge or information sufficient to form a

belief as to the truth of these allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

66.    For consumers who are deceased, there rarely, if ever, exists a permissible purpose under the FCRA for the Credit Bureau Defendants to sell their credit reports, absent a court order.

**ANSWER:** In response to this Paragraph, Experian states that it lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

67.    The Credit Bureau Defendants know that such reports contain a vast amount of personal identifying and credit account information on the supposedly deceased consumer, information that can be used to commit identity theft or for other fraudulent purposes.

**ANSWER:** In response to this Paragraph, Experian states that it lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

### Experian Reports Plaintiff Deceased in or around March 2022

68.    In or around March 2022, Plaintiff learned that Experian was reporting him as deceased.

**ANSWER:** In response to this Paragraph, Experian states that it lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

69.    Specifically, Experian was reporting the following account with a deceased notation:

    a.    American Express
          Account Number:  xxxx-xxxx-xxxx-xxxx
          Date Opened:  March 24,2021

Responsibility:  Deceased
Payment Status:  Consumer reported as deceased

**ANSWER:**   In response to this Paragraph, Experian states that it lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

70.    Experian's reporting was grossly inaccurate:  Plaintiff was not, and is not, deceased.

**ANSWER:**  In response to this Paragraph, Experian denies, generally and specifically, each and every allegation contained therein that relates to Experian.  As to the remaining allegations in this Paragraph, Experian is without knowledge or information sufficient to form a belief as to the truth of those allegations and, on that basis, denies, generally and specifically, each and every remaining allegation of this Paragraph.

71.    Experian's deceased reporting was patently inaccurate because Plaintiff is alive.

**ANSWER:**  In response to this Paragraph Experian denies, generally and specifically, each and every allegation contained therein that relates to Experian.  As to the remaining allegations in this Paragraph, Experian is without knowledge or information sufficient to form a belief as to the truth of those allegations and, on that basis, denies, generally and specifically, each and every remaining allegation of this Paragraph.

72.    Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy of the credit information it published and maintained concerning Plaintiff.

**ANSWER:**  In response to this Paragraph, Experian denies that it has violated the FCRA and denies that it is liable to Plaintiff for any alleged damages.  As to the remaining

allegations in this Paragraph, Experian is without knowledge of information sufficient to form a belief as to the truth of the allegations contained therein and, on that basis, denies, generally and specifically, each and every allegation contained therein.

### Plaintiffs First Dispute to Experian Regarding the Inaccurate Credit Reporting in March 2022

73.    In or about March 2022, extremely shocked, surprised, and embarrassed at Experian's inaccurate reporting, Plaintiff called Experian and disputed the deceased notation that it was reporting on his credit reports.

**ANSWER:**  In response to this Paragraph, Experian denies that it has violated the FCRA and denies that it is liable to Plaintiff for any alleged damages.  As to the remaining allegations in this Paragraph, Experian is without knowledge of information sufficient to form a belief as to the truth of the allegations contained therein and, on that basis, denies, generally and specifically, each and every allegation contained therein.

74.    During Plaintiffs phone dispute with Experian, a representative for Experian confirmed that there was a deceased notation reporting to Plaintiffs credit file in relation to one American Express account.

**ANSWER:**  In response to this Paragraph, Experian denies that it has violated the FCRA and denies that it is liable to Plaintiff for any alleged damages.  As to the remaining allegations in this Paragraph, Experian is without knowledge of information sufficient to form a belief as to the truth of the allegations contained therein and, on that basis, denies, generally and specifically, each and every allegation contained therein.

75.    Plaintiff explained that any notation that he was deceased on his credit files was inaccurate as he was alive, evidenced by his phone dispute, among other things.

**ANSWER:** In response to this Paragraph, Experian denies that it has violated the FCRA and denies that it is liable to Plaintiff for any alleged damages. As to the remaining allegations in this Paragraph, Experian is without knowledge of information sufficient to form a belief as to the truth of the allegations contained therein and, on that basis, denies, generally and specifically, each and every allegation contained therein.

76. Plaintiff requested that Experian reinvestigate the disputed information, correct the reporting, and for Experian to send him a corrected copy of his credit report.

**ANSWER:** In response to this Paragraph, Experian denies that it has violated the FCRA and denies that it is liable to Plaintiff for any alleged damages. As to the remaining allegations in this Paragraph, Experian is without knowledge of information sufficient to form a belief as to the truth of the allegations contained therein and, on that basis, denies, generally and specifically, each and every allegation contained therein.

77. Plaintiff never heard back from Experian regarding his dispute of the inaccurate deceased notation.

**ANSWER:** In response to this Paragraph, Experian denies that it has violated the FCRA and denies that it is liable to Plaintiff for any alleged damages. As to the remaining allegations in this Paragraph, Experian is without knowledge of information sufficient to form a belief as to the truth of the allegations contained therein and, on that basis, denies, generally and specifically, each and every allegation contained therein.

78. Thereafter, Experian failed to correct or delete the deceased notation appearing in Plaintiffs credit file.

**ANSWER:** In response to this Paragraph, Experian denies that it has violated the FCRA and denies that it is liable to Plaintiff for any alleged damages. As to the remaining

allegations in this Paragraph, Experian is without knowledge of information sufficient to form a belief as to the truth of the allegations contained therein and, on that basis, denies, generally and specifically, each and every allegation contained therein.

79.    Experian failed to conduct a reasonable reinvestigation of Plaintiffs March 2022 dispute, or any reinvestigation whatsoever, to determine whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(l)(A).

**ANSWER:**  In response to this Paragraph, Experian denies that it has violated the FCRA and denies that it is liable to Plaintiff for any alleged damages.  As to the remaining allegations in this Paragraph, Experian is without knowledge of information sufficient to form a belief as to the truth of the allegations contained therein and, on that basis, denies, generally and specifically, each and every allegation contained therein.

80.    Defendant AMEX violated 15 U.S.C. § 1681s-2(b) by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to remove the deceased notation(s) from Plaintiffs credit file.

**ANSWER:**  In response to this Paragraph, Experian is without knowledge of information sufficient to form a belief as to the truth of the allegations contained therein and, on that basis, denies, generally and specifically, each and every allegation contained therein.

81.    Upon information and belief, thereafter, Experian failed to correct or delete the deceased notation appearing in Plaintiffs credit report and continued to report him as deceased.

**ANSWER:**  In response to this Paragraph, Experian denies that it has violated the FCRA and denies that it is liable to Plaintiff for any alleged damages.  As to the remaining allegations in this Paragraph, Experian is without knowledge of information sufficient to

form a belief as to the truth of the allegations contained therein and, on that basis, denies, generally and specifically, each and every allegation contained therein.

82.   Rather, in or around April 2022, Experian added another deceased notation into Plaintiffs credit file.

**ANSWER:**  In response to this Paragraph, Experian denies that it has violated the FCRA and denies that it is liable to Plaintiff for any alleged damages.  As to the remaining allegations in this Paragraph, Experian is without knowledge of information sufficient to form a belief as to the truth of the allegations contained therein and, on that basis, denies, generally and specifically, each and every allegation contained therein.

83.   Specifically, Experian was reporting the following account with a deceased notation:

    a.   American Express
         Account Number:  xxxx-xxxx-xxxx-xxxx
         Date Opened:  March 19, 2018
         Responsibility:  Deceased
         Payment Status:  Consumer reported as deceased

**ANSWER:**  In response to this Paragraph, Experian denies that it has violated the FCRA and denies that it is liable to Plaintiff for any alleged damages.  As to the remaining allegations in this Paragraph, Experian is without knowledge of information sufficient to form a belief as to the truth of the allegations contained therein and, on that basis, denies, generally and specifically, each and every allegation contained therein.

84.   Again, Experian's deceased reporting was patently inaccurate because Plaintiff is alive.

**ANSWER:**  In response to this Paragraph, Experian denies that it has violated the FCRA and denies that it is liable to Plaintiff for any alleged damages.  As to the remaining

26

allegations in this Paragraph, Experian is without knowledge of information sufficient to form a belief as to the truth of the allegations contained therein and, on that basis, denies, generally and specifically, each and every allegation contained therein.

### Plaintiff Obtains His Credit Reports and Confirms Trans Union is Reporting him as Deceased

85.    In or around May 2022, and in preparation for his anticipated mortgage application, Plaintiff viewed his Trans Union credit file.

**ANSWER:**  In response to this Paragraph, Experian is without knowledge of information sufficient to form a belief as to the truth of the allegations contained therein and, on that basis, denies, generally and specifically, each and every allegation contained therein.

86.    Much to his shock, surprise, confusion, and frustration, Plaintiff learned that Trans Union was reporting him as deceased.

**ANSWER:**  In response to this Paragraph, Experian is without knowledge of information sufficient to form a belief as to the truth of the allegations contained therein and, on that basis, denies, generally and specifically, each and every allegation contained therein.

87.    Specifically, Trans Union was reporting the following account with a deceased notation:

    a.    American Express
          Account Number:  xxxx-xxxx-xxxx-xxxx
          Date Opened:  March 19, 2018
          Remarks:  Deceased

**ANSWER:**   In response to this Paragraph, Experian is without knowledge of information sufficient to form a belief as to the truth of the allegations contained therein and, on that basis, denies, generally and specifically, each and every allegation contained therein.

88.    Trans Union also marked the following account as "undesignated:"

      a.      American Express
              Account Number:  xxxx-xxxx-xxxx-xxxx
              Date Opened:  March 19,2018
              Responsibility:  Undesignated

**ANSWER:**   In response to this Paragraph, Experian is without knowledge of information sufficient to form a belief as to the truth of the allegations contained therein and, on that basis, denies, generally and specifically, each and every allegation contained therein.

89.   Trans Union's reporting was grossly inaccurate:  Plaintiff was not, and is not, deceased.

**ANSWER:**  In response to this Paragraph, Experian is without knowledge of information sufficient to form a belief as to the truth of the allegations contained therein and, on that basis, denies, generally and specifically, each and every allegation contained therein.

90.   Trans Union's deceased reporting was patently inaccurate because Plaintiff is alive.

**ANSWER:**  In response to this Paragraph, Experian is without knowledge of information sufficient to form a belief as to the truth of the allegations contained therein and, on that basis, denies, generally and specifically, each and every allegation contained therein.

91.   Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy of the credit information it published and maintained concerning Plaintiff.

**ANSWER:**  In response to this Paragraph, Experian is without knowledge of information sufficient to form a belief as to the truth of the allegations contained therein and, on that basis, denies, generally and specifically, each and every allegation contained therein.

**Plaintiff's First Dispute to Trans Union
Regarding the Inaccurate Credit Reporting in May 2022**

92.     In or about May 2022, extremely shocked, surprised, and embarrassed at Trans Union's inaccurate reporting, Plaintiff disputed, with Trans Union, the deceased notation that it was reporting on his credit reports.

**ANSWER:**  In response to this Paragraph, Experian is without knowledge of information sufficient to form a belief as to the truth of the allegations contained therein and, on that basis, denies, generally and specifically, each and every allegation contained therein.

93.     Plaintiffs dispute alerted Trans Union to the fact that the deceased notation on his credit file was inaccurate as he was alive, evidenced by his dispute, among other things.

**ANSWER:**  In response to this Paragraph, Experian is without knowledge of information sufficient to form a belief as to the truth of the allegations contained therein and, on that basis, denies, generally and specifically, each and every allegation contained therein.

94.     Plaintiff requested that Trans Union reinvestigate the disputed information, correct the reporting, and for Trans Union to send him a corrected copy of his credit report.

**ANSWER:**  In response to this Paragraph, Experian is without knowledge of information sufficient to form a belief as to the truth of the allegations contained therein and, on that basis, denies, generally and specifically, each and every allegation contained therein.

95.     Upon information and belief, shortly thereafter, Trans Union removed the deceased notation from Plaintiffs credit file.

**ANSWER:**  In response to this Paragraph, Experian is without knowledge of information sufficient to form a belief as to the truth of the allegations contained therein and, on that basis, denies, generally and specifically, each and every allegation contained therein.

96.     However, Trans Union then reported "undesignated" in the "responsibility field" of both the March 19, 2018 and March 24, 2021 American Express accounts.

**ANSWER:** In response to this Paragraph, Experian is without knowledge of information sufficient to form a belief as to the truth of the allegations contained therein and, on that basis, denies, generally and specifically, each and every allegation contained therein.

**The Credit Bureau Defendants\* Method
for Considering Consumer Credit Report Disputes**

97.     The credit industry has constructed a method of numeric-alpha codes for considering consumer credit report disputes.  See 15 U.S.C. § 1681i(a)(5)(D).

**ANSWER:** In response to this Paragraph, Experian states that 15 U.S.C. § 1681i(a)(5)(D) is a statute that speaks for itself and, on that basis, denies any allegations inconsistent therewith. The statements contained in this Paragraph are also vague and ambiguous. To the extent a further response is required, Experian denies, generally and specifically, each and every allegation contained therein.

98.     The credit bureaus, Equifax, Experian, Trans Union, and Innovis, have thus created the Online Solution for Complete and Accurate Reporting, or e- OSCAR, as the credit industries' standard of performance.  E-OSCAR allows the credit bureaus to create and data furnishers to respond to disputes initiated by consumers by routing credit reporting agency-created prompts for automated consumer dispute verifications to the appropriate data furnishers.  E-OSCAR utilizes a numeric-alpha language specific to the credit reporting industry.

**ANSWER:** In response to this Paragraph, , Experian admits that it developed the e-OSCAR system with Equifax, Trans Union, and Innovis. Experian further admits that e-OSCAR was designed to provide data furnishers an online solution for processing Automated Credit Dispute Verifications ("ACDVs"), and that it uses language specific to

30

the credit reporting industry. Except as specifically admitted, Experian denies, generally and specifically, each and every remaining allegation in this Paragraph.

99.    That lexicon or unique language is commonly referred to in the credit reporting industry as "Metro II."

**ANSWER:** In response to this Paragraph, Experian admits that the credit reporting industry uses a standard electronic data reporting format called the Metro 2 Format. The Metro 2 Format speaks for itself. Except as specifically admitted, Experian denies, generally and specifically, each and every remaining allegation in this Paragraph.

100.    It is also known industry wide as the CDIA's "Credit Reporting Resource Guide."

**ANSWER:** In response to this Paragraph, Experian states that it lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

101.    Metro II is driven by numeric codes that translate into specific alpha representations about consumers' creditworthiness and character that will ultimately appear on credit reports issued to third parties who make credit, insurance, rental, and employment decisions regarding consumers.

**ANSWER:** In response to this Paragraph, Experian admits the Metro 2 Format enables the reporting of consumer data. The Metro 2 Format speaks for itself. Except as specifically admitted, Experian denies, generally and specifically, each and every remaining allegation in this Paragraph.

102.    Metro II codes are used on an industry wide form known within the credit industry as an Automated Consumer Dispute Verification ("ACDV") electronic form.

31

**ANSWER:** In response to this Paragraph, Experian admits that the credit reporting industry uses the Metro 2 Format, which is designed to foster the reporting of consumer data and is used in ACDVs. The Metro 2 Format speaks for itself. Except as specifically admitted, Experian denies, generally and specifically, each and every remaining allegation in this Paragraph.

103.   The ACDVs have many fields in their body for use in effecting thorough and complete communications between data furnishers and the credit reporting agencies.

**ANSWER:**  In response to this Paragraph, Experian states that the ACDV forms speak for themselves.   Experian denies, generally and specifically, each and every remaining allegation in this Paragraph.

104.   These ACDV "fields" have various titles for the many substantive areas into which the Metro II codes can be entered.

**ANSWER:**  In response to this Paragraph, Experian states that the ACDV forms speak for themselves. Experian denies, generally and specifically, each and every remaining allegation in this Paragraph.

105.   Upon receiving a dispute from a consumer, the credit bureaus have an automated system that prepares ACDVs that are sent to each of the data furnishers that are reporting the credit accounts disputed by a consumer.

**ANSWER:**  In response to this Paragraph, Experian states that the ACDV forms speak for themselves. Experian denies, generally and specifically, each and every remaining allegation in this Paragraph.

106.   The data furnishers, like Defendant AMEX, then have an obligation under the FCRA to conduct a reasonable reinvestigation with respect to the disputed credit account and review all relevant information provided by the consumer with the dispute to

determine whether the disputed credit account information is accurate and/or belongs to the disputing consumer.  See 15 U.S.C. § 1681s-2(b).

**ANSWER:**  In response to this Paragraph, , Experian admits that the allegations contained therein appear to describe a portion of the FCRA. Experian states that the FCRA speaks for itself and, on that basis, denies any allegations inconsistent therewith.

107.    Once the data furnisher completes its reinvestigation, it will code the ACDV accordingly, representing either that the disputed account was verified as accurate and belonging to the disputing consumer, updating information related to the account, or deleting the account entirely, and return the ACDV to the respective credit bureau(s) via e-OSCAR.

**ANSWER:**  In response to this Paragraph, Experian states that it lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

### Plaintiff Applies for a Mortgage with Cross Country Mortgage in June 2022

108.    In or around June 2022, Plaintiff began searching for a mortgage financing company to finance the purchase of a new home.

**ANSWER:**  In response to this Paragraph, Experian states that it lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

109.    In or around June 2022, Plaintiff began inquiring with Cross Country Mortgage about their mortgage products.

**ANSWER:**  In response to this Paragraph, Experian states that it lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

110.   In or around June 2022, Plaintiff worked with a representative at Cross Country Mortgage and discussed various mortgage options to find the mortgage terms that best suited his needs.

**ANSWER:** In response to this Paragraph, Experian states that it lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

111.   In or around June 2022, Plaintiff worked with a representative at Cross Country Mortgage and completed and submitted a credit application with Cross Country Mortgage to obtain financing for the purchase of a home.

**ANSWER:** In response to this Paragraph, Experian states that it lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

112.   The representative at Cross Country Mortgage collected all of Plaintiffs personal identification information, including his social security number, and ordered his credit reports and/or credit scores in order to determine Plaintiffs credit eligibility for financing purposes.

**ANSWER:** In response to this Paragraph, Experian states that it lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

### Cross Country Mortgage Denies
### Plaintiffs Mortgage Application June 2022

113.   Shortly after submitting his credit application, the representative informed Plaintiff that Cross Country Mortgage was unable to approve Plaintiff for credit because the Credit Bureau Defendants were reporting him as deceased on his credit reports, and consequently, the Credit Bureau Defendants were not reporting a credit score for Plaintiff.

**ANSWER:** In response to this Paragraph, Experian states that it lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

114. In or around June 2022, Cross Country Mortgage denied Plaintiffs credit application based upon the contents of the Credit Bureau Defendants' credit reports sold about Plaintiff.

**ANSWER:** In response to this Paragraph, Experian denies, generally and specifically, each and every allegation contained therein that relates to Experian. As to the remaining allegations in this Paragraph, Experian is without knowledge or information sufficient to form a belief as to the truth of those allegations and, on that basis, denies, generally and specifically, each and every remaining allegation contained therein.

115. Due to the Credit Bureau Defendants' inaccurate reporting, Plaintiff was not offered any mortgage to purchase the home he needed.

**ANSWER:** In response to this Paragraph In response to this Paragraph, Experian denies, generally and specifically, each and every allegation contained therein that relates to Experian. As to the remaining allegations in this Paragraph, Experian is without knowledge or information sufficient to form a belief as to the truth of those allegations and, on that basis, denies, generally and specifically, each and every remaining allegation contained therein.

116. Despite his best efforts, Plaintiff was unable to secure a mortgage from Cross Country Mortgage and could not purchase the house he was interested in.

**ANSWER:** In response to this Paragraph, Experian states that it lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

117.   Ultimately, Plaintiff and his significant other purchased a smaller condo, as opposed to a house.  This was because the deceased reporting rendered Plaintiff ineligible to secure a mortgage and his income could not be accounted for in their purchasing power. Instead of both being on the mortgage, the mortgage was in Plaintiffs significant other's name only.

**ANSWER:** In response to this Paragraph, Experian denies, generally and specifically, each and every allegation contained therein that relates to Experian.  As to the remaining allegations in this Paragraph, Experian is without knowledge or information sufficient to form a belief as to the truth of those allegations and, on that basis, denies, generally and specifically, each and every remaining allegation contained therein.

118.   This caused tension between Plaintiff and his significant other who had hoped to purchase a house where they could raise their family and have additional space, including a yard.

**ANSWER:** In response to this Paragraph, Experian states that it lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

119.   Thereafter, Plaintiff refrained from applying for credit, despite desiring to do so, out of sheer fear that the inaccurate reporting would result in additional credit denials and harm to his credit.

**ANSWER:** In response to this Paragraph, Experian states that it lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

**Plaintiffs Second Dispute to Experian Regarding
the Inaccurate Credit Reporting in the Summer of 2022**

120.   On at least one occasion in or around summer 2022, extremely shocked, surprised, and embarrassed at Experian's continued inaccurate reporting, which had ultimately caused the mortgage denial, Plaintiff disputed the inaccurate deceased notation with Experian.

**ANSWER:**  In response to this Paragraph, Experian denies that it has violated the FCRA

and denies that it is liable to Plaintiff for any alleged damages.  As to the remaining

allegations in this Paragraph, Experian is without knowledge of information sufficient to

form a belief as to the truth of the allegations contained therein and, on that basis, denies,

generally and specifically, each and every allegation contained therein.

121.   Plaintiff's dispute again alerted Experian to the fact that the deceased notation on his credit file was inaccurate as he was alive, evidenced by his dispute, among other things.

**ANSWER:**  In response to this Paragraph, Experian denies that it has violated the FCRA

and denies that it is liable to Plaintiff for any alleged damages.  As to the remaining

allegations in this Paragraph, Experian is without knowledge of information sufficient to

form a belief as to the truth of the allegations contained therein and, on that basis, denies,

generally and specifically, each and every allegation contained therein.

122.   Plaintiff requested that Experian reinvestigate the disputed information, correct the reporting, and for Experian to send him a corrected copy of his credit report.

**ANSWER:**  In response to this Paragraph, Experian denies that it has violated the FCRA

and denies that it is liable to Plaintiff for any alleged damages.  As to the remaining

allegations in this Paragraph, Experian is without knowledge of information sufficient to

form a belief as to the truth of the allegations contained therein and, on that basis, denies, generally and specifically, each and every allegation contained therein.

123.    Despite Plaintiffs efforts, not until September 2022, did Experian remove the deceased notation from his file.

**ANSWER:**  In response to this Paragraph, Experian denies that it has violated the FCRA and denies that it is liable to Plaintiff for any alleged damages.  As to the remaining allegations in this Paragraph, Experian is without knowledge of information sufficient to form a belief as to the truth of the allegations contained therein and, on that basis, denies, generally and specifically, each and every allegation contained therein.

### Experian Reinserted the Deleted Information into Plaintiffs File

124.    Sometime in or around late-September 2022, Experian reinserted the inaccurate information that Plaintiff disputed on at least two occasions in 2022.

**ANSWER:**  In response to this Paragraph, Experian denies that it has violated the FCRA and denies that it is liable to Plaintiff for any alleged damages.  As to the remaining allegations in this Paragraph, Experian is without knowledge of information sufficient to form a belief as to the truth of the allegations contained therein and, on that basis, denies, generally and specifically, each and every allegation contained therein.

125.    Specifically, Experian reinserted a deceased notation to Plaintiffs file in relation to the March 24, 2021 American Express account.

**ANSWER:**  In response to this Paragraph, Experian denies that it has violated the FCRA and denies that it is liable to Plaintiff for any alleged damages.  As to the remaining allegations in this Paragraph, Experian is without knowledge of information sufficient to

form a belief as to the truth of the allegations contained therein and, on that basis, denies, generally and specifically, each and every allegation contained therein.

126.   Plaintiff had previously disputed the deceased notations in 2022 on at least two occasions.

**ANSWER:**  In response to this Paragraph, Experian denies that it has violated the FCRA and denies that it is liable to Plaintiff for any alleged damages.  As to the remaining allegations in this Paragraph, Experian is without knowledge of information sufficient to form a belief as to the truth of the allegations contained therein and, on that basis, denies, generally and specifically, each and every allegation contained therein.

127.   And upon information and belief, Experian finally deleted the deceased notations in or around September 2022.

**ANSWER:**  In response to this Paragraph, Experian denies that it has violated the FCRA and denies that it is liable to Plaintiff for any alleged damages.  As to the remaining allegations in this Paragraph, Experian is without knowledge of information sufficient to form a belief as to the truth of the allegations contained therein and, on that basis, denies, generally and specifically, each and every allegation contained therein.

128.   However, when Plaintiff reviewed his Experian credit file in or around late September 2022, he saw that Experian was once again reporting him as deceased.

**ANSWER:**  In response to this Paragraph, Experian denies that it has violated the FCRA and denies that it is liable to Plaintiff for any alleged damages.  As to the remaining allegations in this Paragraph, Experian is without knowledge of information sufficient to form a belief as to the truth of the allegations contained therein and, on that basis, denies, generally and specifically, each and every allegation contained therein.

129.    Experian failed to notify Plaintiff of the reinsertion in writing as required by 15 U.S.C. § 1681 i(a)(5)(B)(ii) and (iii).

**ANSWER:**  In response to this Paragraph, Experian denies that it has violated the FCRA and denies that it is liable to Plaintiff for any alleged damages.  As to the remaining allegations in this Paragraph, Experian is without knowledge of information sufficient to form a belief as to the truth of the allegations contained therein and, on that basis, denies, generally and specifically, each and every allegation contained therein.

130.    Experian reinserted the inaccurate deceased notation into Plaintiffs file in violation of 15 U.S.C. § 1681i(a)(5)(B)(i).

**ANSWER:**  In response to this Paragraph, Experian denies that it has violated the FCRA and denies that it is liable to Plaintiff for any alleged damages.  As to the remaining allegations in this Paragraph, Experian is without knowledge of information sufficient to form a belief as to the truth of the allegations contained therein and, on that basis, denies, generally and specifically, each and every allegation contained therein.

131.    Experian failed to maintain reasonable procedures designed to prevent the reappearance in a consumer's file of information that is deleted pursuant to 15 U.S.C. 1681i.

**ANSWER:**  In response to this Paragraph, Experian denies that it has violated the FCRA and denies that it is liable to Plaintiff for any alleged damages.  As to the remaining allegations in this Paragraph, Experian is without knowledge of information sufficient to form a belief as to the truth of the allegations contained therein and, on that basis, denies, generally and specifically, each and every allegation contained therein.

**Trans Union Reinserted the Deleted Information into Plaintiffs File**

132.   Sometime, in or around November 2022, Trans Union reinserted the inaccurate information that Plaintiff disputed in or around May 2022.

**ANSWER:** In response to this Paragraph, Experian states that it lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

133.   Specifically, Trans Union reinserted a deceased notation to Plaintiffs file in relation to the March 24, 2021 American Express account.

**ANSWER:** In response to this Paragraph, Experian states that it lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

134.   Trans Union continued to report "undesignated" in the responsibility field of the March 19, 2018 American Express account.

**ANSWER:** In response to this Paragraph, Experian states that it lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

135.   Plaintiff had previously disputed the deceased notation in May 2022. And upon information and belief, Trans Union deleted the deceased notation in response to Plaintiffs dispute.

**ANSWER:** In response to this Paragraph, Experian states that it lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

136.   When Plaintiff reviewed his Trans Union credit file in or around November 2022, he saw that Trans Union was once again reporting him as deceased.

**ANSWER:** In response to this Paragraph, Experian states that it lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

137. Trans Union failed to notify Plaintiff of the reinsertion in writing as required by 15 U.S.C. § 1681i(a)(5)(B)(ii) and (iii).

**ANSWER:** In response to this Paragraph, Experian states that it lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

138. Trans Union reinserted the inaccurate deceased notation into Plaintiffs file in violation of 15 U.S.C. § 1681 i(a)(5)(B)(i).

**ANSWER:** In response to this Paragraph, Experian states that it lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

139. Trans Union failed to maintain reasonable procedures designed to prevent the reappearance in a consumer's file of information that is deleted pursuant to 15 U.S.C. 1681i.

**ANSWER:** In response to this Paragraph, Experian states that it lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

140. Plaintiff reasonably believes that Defendant AMEX continued to furnish data to the national credit bureaus inaccurately suggesting that Plaintiff was deceased.

**ANSWER:** In response to this Paragraph, Experian states that it lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

141.    Plaintiff reasonably believes that the Credit Bureau Defendants continued to publish that he was deceased in the credit reports they each issued about him.

**ANSWER:**  In response to this Paragraph, Experian denies that it has violated the FCRA and denies that it is liable to Plaintiff for any alleged damages.  As to the remaining allegations in this Paragraph, Experian is without knowledge of information sufficient to form a belief as to the truth of the allegations contained therein and, on that basis, denies, generally and specifically, each and every allegation contained therein.

142.    As a result of the "deceased" notation(s), the Defendants made it practically impossible for Plaintiff to obtain credit.

**ANSWER:**  In response to this Paragraph, Experian denies that it has violated the FCRA and denies that it is liable to Plaintiff for any alleged damages.  As to the remaining allegations in this Paragraph, Experian is without knowledge of information sufficient to form a belief as to the truth of the allegations contained therein and, on that basis, denies, generally and specifically, each and every allegation contained therein.

143.    At all times pertinent hereto, Defendants were acting by and through their agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

**ANSWER:** In response to this Paragraph, Experian states that it lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

144.    At all times pertinent hereto, the conduct of Defendants, as well as that of their respective agents, servants, and/or employees, was intentional, willful, reckless, grossly negligent and in utter disregard for federal law and the rights of Plaintiff herein.

**ANSWER:**  In response to this Paragraph, Experian denies, generally and specifically, the allegations contained therein that pertain to Experian. Regarding allegations against other defendants, Experian states that it lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

145.    As a standard practice, the Credit Bureau Defendants do not conduct independent investigations in response to consumer disputes.  Instead, they merely parrot the response of the credit furnisher, like AMEX here, despite numerous court decisions admonishing this practice.  See Cushman v. Trans Union Corp., 115 F.3d 220, 225 (3d Cir. 1997) (The 'grave responsibility[y]' imposed by § 1681(a) must consist of something more than merely parroting information received from other sources.   Therefore, a 'reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute."); Apodaca v. Discover Fin. Servs., 417 F. Supp. 2d 1220, 1230-31 (D.N.M. 2006) (noting that credit reporting agencies may not rely on automated procedures that make only superficial inquiries once the consumer has notified it that information is disputed); Gorman v. Experian Info.  Sols., Inc., 2008 WL 4934047, at *6 (S.D.N.Y. Nov. 19,2008).

**ANSWER:**  In response to this Paragraph, Experian denies, generally and specifically, the allegations contained therein that pertain to Experian. Regarding allegations against other defendants, Experian states that it lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein. To the extent a further response is required, Experian admits that the allegations contained in this Paragraph appear to set forth portions of judicial opinions describing the FCRA. Experian states that the FCRA speaks for itself and, on that basis, denies any allegations inconsistent therewith.

146.    The Credit Bureau Defendants are aware of the shortcomings of their procedures and intentionally choose not to comply with the FCRA to lower their costs. Accordingly, the Credit Bureau Defendants' violations of the FCRA are willful.

**ANSWER:** In response to this Paragraph, Experian denies, generally and specifically, the allegations contained therein that pertain to Experian. Regarding allegations against other defendants, Experian states that it lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

147. As a result of Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from his credit; detriment to his credit rating; the expenditure of time disputing and trying to correct the inaccurate credit reporting; sleepless nights; and emotional distress including the mental and emotional pain, anxiety, anguish, humiliation, and embarrassment of credit denials.

**ANSWER:** In response to this Paragraph, Experian denies, generally and specifically, the allegations contained therein that pertain to Experian, denies that it has violated the FCRA, and denies that it is liable to Plaintiff for any alleged damages. As to the remaining allegations in this Paragraph, Experian is without knowledge of information sufficient to form a belief as to the truth of the allegations contained therein and, on that basis, denies, generally and specifically, each and every allegation contained therein.

## CLAIMS FOR RELIEF

### COUNT I
### 15 U.S.C. §1681e(b)
**Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy**
**(First Claim for Relief Against Defendants Experian, and Trans Union)**

148. Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

**ANSWER:** In response to this Paragraph, Experian reasserts its answers and responses to the foregoing Paragraphs as though the same were set forth at length herein.

149.    The FCRA imposes a duty on consumer reporting agencies to devise and implement procedures to ensure the "maximum possible accuracy" of consumer reports, as follows:

> Whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

15 U.S.C. §1681e(b) (emphasis added).

**ANSWER:**    In response to this Paragraph, , Experian admits that the allegations contained therein appear to set forth a portion of the FCRA. Experian states that the FCRA speaks for itself and, on that basis, denies any allegations inconsistent therewith.

150.    On numerous occasions, the Credit Bureau Defendants prepared patently false consumer reports concerning Plaintiff.

**ANSWER:**  In response to this Paragraph, Experian denies, generally and specifically, the allegations contained therein that pertain to Experian. Regarding allegations against other defendants, Experian states that it lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

151.    Despite actual and implied knowledge that Plaintiff is not dead, the Credit Bureau Defendants readily sold such false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately Plaintiffs creditworthiness.

**ANSWER:**  In response to this Paragraph, Experian denies, generally and specifically, the allegations contained therein that pertain to Experian. Regarding allegations against other defendants, Experian states that it lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

152.    Defendant Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff,

**ANSWER:** In response to this Paragraph, Experian denies, generally and specifically, each and every allegation contained therein.

153.    Defendant Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

**ANSWER:** In response to this Paragraph, Experian states that it lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

154.    As a result of the Credit Bureau Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from his credit; detriment to his credit rating; the expenditure of time disputing and trying to correct the inaccurate credit reporting; sleepless nights; and emotional distress including the mental and emotional pain, anxiety, anguish, humiliation, and embarrassment of credit denials.

**ANSWER:** In response to this Paragraph, Experian denies, generally and specifically, the allegations contained therein that pertain to Experian. Regarding allegations against other defendants, Experian states that it lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

155.    The Credit Bureau Defendants' conduct, actions, and inactions were willful, rendering them individually liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168In.  Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

**ANSWER:**  In response to this Paragraph, Experian denies, generally and specifically, the allegations contained therein that pertain to Experian. Regarding allegations against other defendants, Experian states that it lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

156.   Plaintiff is entitled to recover attorneys' fees and costs from the Credit Bureau Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**ANSWER:**  In response to this Paragraph, Experian denies, generally and specifically, the allegations contained therein that pertain to Experian.  Experian denies that Plaintiff is entitled to any damages, costs, fees, or other relief from or against Experian.  Regarding allegations against other defendants, Experian states that it lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

**COUNT II**
**15 U.S.C. § 1681i**
**Failure to Perform a Reasonable Reinvestigation**
**(Second Claim for Relief Against Defendant Experian)**

157.   Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

**ANSWER:**  In response to this Paragraph, Experian reasserts its answers and responses to the foregoing Paragraphs as though the same were set forth at length herein.

158.   The FCRA mandates that a CRA conducts an investigation of the accuracy of information "[I]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer.  See 15 U.S.C. § 1681i(a)(l).  The Act imposed a 30-day time limit for the completion of such an investigation.  Id.

48

**ANSWER:** In response to this Paragraph, Experian admits that the allegations contained therein appear to set forth a portion of the FCRA. Experian states that the FCRA speaks for itself and, on that basis, denies any allegations inconsistent therewith.

159. The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is in fact inaccurate or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file. See 15 U.S.C. § 1681i(a)(5)(A).

**ANSWER:** In response to this Paragraph, Experian admits that the allegations contained therein appear to set forth a portion of the FCRA. Experian states that the FCRA speaks for itself and, on that basis, denies any allegations inconsistent therewith.

160. On at least two occasions during 2022, Plaintiff disputed the inaccurate information with Experian and requested that it delete a specific item in his credit file that is patently inaccurate, misleading, and highly damaging to him, namely, stating that he is "deceased."

**ANSWER:** In response to this Paragraph, Experian denies that it has violated the FCRA, denies that it is liable to Plaintiff for any alleged damages, and denies, generally and specifically, each and every allegation contained therein that relates to Experian. As to the remaining allegations in this Paragraph, Experian is without knowledge of information sufficient to form a belief as to the truth of the allegations contained therein and, on that basis, denies, generally and specifically, each and every allegation contained therein.

161. In response to Plaintiffs dispute, Experian failed to conduct a reinvestigation, or such investigation was so shoddy as to allow patently false, logically inconsistent, and damaging information to remain in Plaintiffs credit file.

**ANSWER:** In response to this Paragraph, Experian denies, generally and specifically, each and every allegation contained therein.

162.   Experian violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which it received the notices of dispute from Plaintiff; and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiffs credit file.

**ANSWER:** In response to this Paragraph, Experian denies, generally and specifically,

each and every allegation contained therein.

163.   As a result of Experian's conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from his credit; detriment to his credit rating; the expenditure of time disputing and trying to correct the inaccurate credit reporting; sleepless nights; and emotional distress including the mental and emotional pain, anxiety, anguish, humiliation, and embarrassment of credit denials.

**ANSWER:**  In response to this Paragraph, Experian denies that it violated the FCRA and

denies that it is liable to Plaintiff for any alleged damages. To the extent a further response

is required, Experian states that it lacks knowledge or information sufficient to form a belief

as to the truth of these allegations and, on that basis, denies, generally and specifically,

each and every allegation contained therein.

164.   Experian's conduct, actions, and inactions were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168ln.  Alternatively, it was negligent, entitling Plaintiff to recover under 15 U.S.C. § 168lo.

**ANSWER:** In response to this Paragraph, Experian denies, generally and specifically,

each and every allegation contained therein.

165.   Plaintiff is entitled to recover attorneys' fees and costs from Defendant Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 168In and/or § 1681o.

50

**ANSWER:**  In response to this Paragraph, Experian denies, generally and specifically, each and every allegation contained therein.  Experian denies that Plaintiff is entitled to any damages, costs, fees, or other relief from or against Experian.

**COUNT III**
**15 U.S.C. § 168li**
**Failure to Prevent Reinsertion and Failure to Notify Consumer of Reinsertion and Failure to Maintain Reasonable Procedures to Prevent Reinsertion**
**(Third Claim for Relief Against Defendant Experian and Second Claim for Relief Against Defendant Trans Union)**

166.    Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

**ANSWER:**  In response to this Paragraph, Experian reasserts its answers and responses to the foregoing Paragraphs as though the same were set forth at length herein.

167.    The FCRA mandates that if a CRA deletes information from a consumer's file pursuant to a dispute, the information must not be reinserted in the file by the CRA unless the furnisher certified that the information is complete and accurate.  See 15 U.S.C. § 168 li(a)(5)(B)(i).

**ANSWER:**  In response to this Paragraph, Experian admits that the allegations contained therein appear to set forth a portion of the FCRA. Experian states that the FCRA speaks for itself and, on that basis, denies any allegations inconsistent therewith.

168.    Further, that if any disputed information that has been deleted from a consumer's file is reinserted in the file, the CRA shall notify the consumer of the reinsertion in writing not later than five (5) business days after the reinsertion.  See 15 U.S.C. § 1681i(a)(5)(B)(ii).

**ANSWER:**  In response to this Paragraph, Experian admits that the allegations contained therein appear to set forth a portion of the FCRA. Experian states that the FCRA speaks for itself and, on that basis, denies any allegations inconsistent therewith.

51

169. Further, the CRAs are required to maintain reasonable procedures designed to prevent the reappearance (or reinsertion) in a consumer's file, and in consumer reports on the consumer, of deleted disputed information. See 15 U.S.C. § 1681i(a)(5)(C).

**ANSWER:** In response to this Paragraph, Experian admits that the allegations contained therein appear to set forth a portion of the FCRA. Experian states that the FCRA speaks for itself and, on that basis, denies any allegations inconsistent therewith.

170. Upon information and belief, Experian reinserted the deceased notation to Plaintiff's file in or around September 2022 after having previously deleted the same in response to Plaintiff's dispute and absent a certification of completeness and accuracy by AMEX.

**ANSWER:** In response to this Paragraph, Experian denies, generally and specifically, each and every allegation contained therein that relates to Experian. As to the remaining allegations in this Paragraph, Experian is without knowledge of information sufficient to form a belief as to the truth of the allegations contained therein and, on that basis, denies, generally and specifically, each and every allegation contained therein.

171. Upon information and belief, Trans Union reinserted the deceased notation to Plaintiff's file in or around November 2022 after having previously deleted the same in response to Plaintiff's dispute and absent a certification of completeness and accuracy by AMEX.

**ANSWER:** In response to this Paragraph, Experian states that it lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

172. Further, neither of the Credit Bureau Defendants notified the Plaintiff in writing within five (5) business days, much less at all, after the reinsertion.

**ANSWER:** In response to this Paragraph, Experian denies, generally and specifically, each and every allegation contained therein that relates to Experian. As to the remaining

52

allegations in this Paragraph, Experian is without knowledge of information sufficient to form a belief as to the truth of the allegations contained therein and, on that basis, denies, generally and specifically, each and every allegation contained therein.

173.   Neither of the Credit Bureau Defendants maintain reasonable procedures designed to prevent the reappearance in a consumer's file of deleted disputed information absent a certification of completeness and accuracy by the Furnisher of that information.

**ANSWER:**  In response to this Paragraph Experian denies, generally and specifically, each and every allegation contained therein that relates to Experian.  As to the remaining allegations in this Paragraph, Experian is without knowledge of information sufficient to form a belief as to the truth of the allegations contained therein and, on that basis, denies, generally and specifically, each and every allegation contained therein.

174.   The Credit Bureau Defendants violated 15 U.S.C. § 1681i(a)(5) by reinserting deleted disputed information to Plaintiffs file absent a certification from AMEX that the information was complete and accurate; by failing to notify the Plaintiff in writing after the reinsertion; and by failing to maintain reasonable procedures designed to prevent the reappearance of deleted disputed information absent a certification of completeness and accuracy by AMEX.

**ANSWER:** In response to this Paragraph, Experian denies, generally and specifically, each and every allegation contained therein that relates to Experian.  As to the remaining allegations in this Paragraph, Experian is without knowledge of information sufficient to form a belief as to the truth of the allegations contained therein and, on that basis, denies, generally and specifically, each and every allegation contained therein.

175.   As a result of the Credit Bureau Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from his credit; detriment to his credit rating; the expenditure of time disputing and trying to correct the inaccurate credit reporting; sleepless nights; and emotional distress including the

mental and emotional pain, anxiety, anguish, humiliation, and embarrassment of credit denials.

**ANSWER:** In response to this Paragraph, Experian denies, generally and specifically, each and every allegation contained therein that relates to Experian. As to the remaining allegations in this Paragraph, Experian is without knowledge of information sufficient to form a belief as to the truth of the allegations contained therein and, on that basis, denies, generally and specifically, each and every allegation contained therein.

176. The Credit Bureau Defendants' conduct, actions, and inactions were willful, rendering them individually liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168In. Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

**ANSWER:** In response to this Paragraph, Experian denies, generally and specifically, each and every allegation contained therein that relates to Experian. As to the remaining allegations in this Paragraph, Experian is without knowledge of information sufficient to form a belief as to the truth of the allegations contained therein and, on that basis, denies, generally and specifically, each and every allegation contained therein.

177. Plaintiff is entitled to recover attorneys' fees and costs from the Credit Bureau Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 168In and/or § 1681o.

**ANSWER:** In response to this Paragraph, Experian denies, generally and specifically, each and every allegation contained therein that relates to Experian. Experian denies that Plaintiff is entitled to any damages, costs, fees, or other relief from or against Experian. As to the remaining allegations in this Paragraph, Experian is without knowledge of information sufficient to form a belief as to the truth of the allegations contained therein

54

and, on that basis, denies, generally and specifically, each and every allegation contained therein.

## COUNT IV
### 15 U.S.C. § 1681s-2b
**Failure to Conduct an Investigation of the Disputed Information and Review all Relevant Information Provided by the Consumer**
**(Only Claim for Relief Against Defendant AMEX)**

178.    Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

**ANSWER:** In response to this Paragraph, Experian reasserts its answers and responses to the foregoing Paragraphs as though the same were set forth at length herein.

179.    Defendant AMEX furnished inaccurate information relating to Plaintiff to the national credit bureaus, including but not limited to Experian and Trans Union.

**ANSWER:** In response to this Paragraph, Experian states that it lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

180.    Defendant AMEX violated 15 U.S.C. § 1681s-2(b) by failing to investigate Plaintiffs dispute(s), or otherwise by failing to fully and properly investigate Plaintiffs dispute(s), including but not limited to failing to review all relevant information regarding the same; by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the inaccurate information relating to Plaintiff to the national credit bureaus, including but not limited to Experian and Trans Union; and, by failing to cease furnishing inaccurate information relating to Plaintiff to the national credit bureaus, including but not limited to Experian Trans Union.

**ANSWER:** In response to this Paragraph, Experian states that it lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

181. As a result of Defendant AMEX's conduct, action, and inaction, Plaintiff suffered damage by loss of credit; loss of ability to purchase and benefit from his credit; detriment to his credit rating; the expenditure of time disputing and trying to correct the inaccurate credit reporting; sleepless nights; and emotional distress including the mental and emotional pain, anxiety, anguish, humiliation, and embarrassment of credit denials.

**ANSWER:** In response to this Paragraph, Experian states that it lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

182. Defendant AMEX's conduct, actions, and inactions were willful, rendering it individually liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168In. Alternatively, it was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

**ANSWER:** In response to this Paragraph, Experian states that it lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

183. Plaintiff is entitled to recover attorneys' fees and costs from Defendant AMEX in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**ANSWER:** In response to this Paragraph, Experian states that it lacks knowledge or information sufficient to form a belief as to the truth of these allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

## PRAYER FOR RELIEF

*[Unnumbered Paragraph]* **WHEREFORE**, Plaintiff prays for the following relief:

a) Determining that Defendants negligently and/or willfully violated the FCRA;

b) Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

    c)       Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

    d)       Granting further relief, in law or equity, as this Court may deem appropriate and just.

**ANSWER:** In response to this Paragraph, Experian admits that Plaintiff has requested that the Court enter a judgment against Experian. Experian denies that Plaintiff is entitled to any relief. Except as specifically admitted, Experian denies each and every remaining allegation in the Prayer for Relief of the Complaint that pertains to Experian. Regarding allegations against other defendants, Experian states that it lacks knowledge or information sufficient to form a belief as to the truth of those allegations and, on that basis, denies, generally and specifically, each and every allegation contained therein.

**DEMAND FOR JURY TRIAL**

*[Unnumbered Paragraph]* Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.  demand a trial by jury.

**ANSWER:** In response to this Paragraph, Experian admits that Plaintiff has demanded a trial by jury on all issues triable by jury.

\*     \*     \*     \*

**RESERVATION OF RIGHTS**

Experian hereby reserves the right to amend its Answer and Affirmative Defenses, and reserves all defenses set out in Rule 8(c) of the Federal Rules of Civil Procedure, the Fair Credit Reporting Act, and any other defenses that may now exist or in the future be available based on discovery or further factual investigation in this case.

57

## EXPERIAN'S AFFIRMATIVE DEFENSES

By asserting the defenses set forth below, Experian does not allege or admit that it has the burden of proof and/or the burden of persuasion with respect to any of these defenses. Nor does Experian admit that Plaintiff is relieved of their burden to prove each and every element of their claims and the damages, if any, to which they are entitled. As for its affirmative defenses, Experian reasserts and reincorporates as if fully set forth herein its responses above to the numbered paragraphs of the Complaint, and to the unnumbered paragraphs contained therein.

### First Affirmative Defense
### (Failure to State A Claim)

The Complaint and each cause of action thereof fail to set forth facts sufficient to state a claim upon which relief may be granted against Experian and further fail to state facts sufficient to entitle Plaintiff to the relief sought, or to any other relief whatsoever from Experian.

### Second Affirmative Defense
### (Truth/Accuracy of Information)

All claims against Experian are barred because all information Experian communicated to any third person regarding Plaintiff was true.

### Third Affirmative Defense
### (Failure to Mitigate Damages)

Plaintiff has failed to mitigate their damages.

### Fourth Affirmative Defense
### (Laches)

The Complaint and each claim for relief therein are barred by laches.

## Fifth Affirmative Defense
### (Contributory/Comparative Fault)

Experian is informed and believes and thereon alleges that any alleged damages sustained by Plaintiff were, at least in part, caused by the actions of Plaintiff and resulted from Plaintiff's own negligence which equaled or exceeded any alleged negligence or wrongdoing by Experian.

## Sixth Affirmative Defense
### (Estoppel)

Any damages which Plaintiff may have suffered, which Experian denies, were the direct and proximate result of the conduct of Plaintiff. Therefore, Plaintiff is estopped and barred from recovery of any damages.

## Seventh Affirmative Defense
### (Unclean Hands)

The Complaint and each claim for relief therein that seeks equitable relief are barred by the doctrine of unclean hands.

## Eighth Affirmative Defense
### (Reasonable Procedures)

At all times relevant to the Complaint, Experian followed reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit reports.

## Ninth Affirmative Defense
### (Intervening Causes)

Plaintiff's alleged injuries were not caused by Experian, but by independent intervening causes which had no relation in fact to any conduct of Experian.

## Tenth Affirmative Defense
### (Immunity)

All claims against Experian are barred by the qualified immunity of 15 U.S.C. § 1681h(e).

## Eleventh Affirmative Defense
### (Indemnification)

Experian is informed and believes and thereon alleges that any purported damages allegedly suffered by Plaintiff are the results of acts or omissions of third persons over whom Experian had neither control nor responsibility.

## Twelfth Affirmative Defense
### (Improper Request for Punitive Damages)

Plaintiff's Complaint does not allege facts sufficient to rise to the level of conduct required to recover punitive damages, and thus all requests for punitive damages are improper.

## Thirteenth Affirmative Defense
### (Right to Assert Additional Defenses)

Experian reserves the right to assert additional affirmative defenses at such time and to such extent as warranted by discovery and the factual developments in this case.

### PRAYER FOR RELIEF

WHEREFORE, Defendant Experian Information Solutions, Inc. prays as follows:

(1) That Plaintiff take nothing by virtue of the Complaint herein and that this action be dismissed in its entirety;

(2) For costs of suit and attorneys' fees herein incurred; and

60

(3) For such other and further relief as the Court may deem just and proper.


Dated: March 16, 2023                    Respectfully submitted,


                                         /s/ Valerie A. Stacey
                                         Valerie A. Stacey, MN #0399416
                                         **JONES DAY**
                                         90 South Seventh Street, Suite 4950
                                         Minneapolis, MN  55402
                                         Telephone:  (612) 217-8800
                                         Facsimile:   (844) 345-3178
                                         vstacey@jonesday.com

                                         *Attorney for Defendant*
                                         *Experian Information Solutions, Inc.*